## CONFIDENTIAL PRIVATE PLACEMENT OFFERING
## MEMORANDUM

# NEWPOINT FINANCIAL SERVICES, INC.
### A Nevada Corporation

### $20,000,000 Maximum Offering

**Tiered Variable Interest Rate Subordinated Debentures**
**Minimum Purchase Amount: $30,000**

**Offering Date:** May 1, 2003

NEWPOINT FINANCIAL SERVICES, INC., a Nevada corporation (the "Company" formerly known as Newpoint Investments, Inc.) is offering an aggregate of $20,000,000 in Tiered Variable Interest Rate Subordinated Debentures (the "Debentures") to investors who fall within Federal requirements set forth in Section 4(2) and Rule 506 of Regulation D of the Securities Act of 1933 (the "1933 Act"). The Offering will consist of a maximum of $20,000,000 with a minimum purchase amount of $30,000.00 (the "Offering"). See "Terms of the Offering - Plan of Distribution" and "Risk Factors - Arbitrary Determination of Offering Price." Under this Private Placement Offering Memorandum (this "Memorandum"), as supplemented from time to time by a memorandum supplement (each, a "Memorandum Supplement") and pursuant to the Offering, the Company may sell the Debentures in one or more offerings up to a total dollar amount of $20,000,000. This Memorandum provides you with a general description of those securities. Each time the Company sells these securities, the Company is required to provide you with this Memorandum and a Memorandum Supplement containing specific information about the Company and the terms of the securities being offered. That Memorandum Supplement may include a discussion of any risk factors or other special considerations applicable to those securities. Any Memorandum Supplement also may add, update or change information in this Memorandum. If there is any inconsistency between the information in this Memorandum and any Memorandum Supplement, you should rely on the information in the Memorandum Supplement. You should read both this Memorandum and any Memorandum Supplement together with the any additional information that you receive through a request to the Company at the address provided below.

Attached as Exhibit A to this Memorandum is the schedule of interest rates payable by the Company on the Debentures, which interest rate varies depending upon the maturity period of the Debenture. The schedule attached as Exhibit A is effective as of the date of this Memorandum and is subject to revision based on the prevailing market rate for the applicable maturity period.

Memorandum No._____          Offeree Name:_____

Exhibit ___1___ Page ___6___

NFS11249

THE COMPANY IS OFFERING THE SECURITIES WITHOUT REGISTRATION UNDER THE 1933 ACT OR OTHER APPLICABLE SECURITIES LAWS IN RELIANCE UPON THE EXEMPTIONS FROM REGISTRATION PROVIDED BY SECTION 4(2) OF THE 1933 ACT, AND REGULATION D AND RULE 506 PROMULGATED THEREUNDER, AND EXEMPTIONS UNDER APPLICABLE STATE LAWS. NO FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY HAS RECOMMENDED OR APPROVED THE SECURITIES, NOR HAVE SUCH AUTHORITIES PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THE SECURITIES OFFERED HEREIN ARE SPECULATIVE, AND AN INVESTMENT IN THESE SECURITIES INVOLVES A HIGH DEGREE OF RISK.

## INVESTOR NOTICES

THIS PRIVATE PLACEMENT OFFERING MEMORANDUM (THE "MEMORANDUM") IS BEING FURNISHED TO PROSPECTIVE INVESTORS ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH THE CONSIDERATION OF THE PURCHASE OF THE ABOVE-CAPTIONED SECURITIES OF NEWPOINT FINANCIAL SERVICES, INC., A NEVADA CORPORATION (THE "COMPANY"). THIS OFFERING IS INTENDED TO BE EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). DUE TO ITS CONFIDENTIAL NATURE, THIS MEMORANDUM MAY NOT BE REPRODUCED, IN WHOLE OR IN PART, OR DELIVERED TO ANY PERSON OTHER THAN THE PROSPECTIVE INVESTOR'S FINANCIAL ADVISOR WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH PROSPECTIVE INVESTOR AGREES TO THE FOREGOING AND TO RETURN THIS MEMORANDUM TO THE COMPANY IF SUCH INVESTOR DETERMINES NOT TO MAKE AN INVESTMENT IN THE COMPANY.

THE DEBENTURES ARE NOT BANK OR FEDERALLY GUARANTEED OR SECURED AND INVESTORS MAY LOSE ANY PORTION OR ALL OF THEIR INVESTMENT AT ANY TIME.

THE SECURITIES ISSUABLE PURSUANT TO THIS OFFERING HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT, AS AMENDED OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS. THE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY, ASSIGNMENT AND RESALE AND MAY NOT BE TRANSFERRED, ASSIGNED OR RESOLD EXCEPT AS

Exhibit _____1_____ Page_____7_____

NFS11250

PERMITTED UNDER THE SECURITIES ACT AND SUCH STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR AN EXEMPTION THERE FROM. THE INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THESE AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL AND IS A CRIMINAL OFFENSE.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR IN ANY OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED. THE INTERESTS ARE OFFERED SUBJECT TO THE RIGHT OF THE COMPANY IN ITS SOLE DISCRETION TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART. EACH PURCHASER OF THE SECURITIES OFFERED HEREBY MUST FALL WITHIN FEDERAL REQUIREMENTS SET FORTH IN SECTION 4(2) AND RULE 506 OF REGULATION D OF THE SECURITIES ACT OF 1933.

AN INVESTMENT IN THE COMPANY IS SPECULATIVE AND INVOLVES RISK. INVESTORS SHOULD HAVE THE FINANCIAL ABILITY AND WILLINGNESS TO ACCEPT SUCH RISKS AND THE LACK OF LIQUIDITY THAT IS CHARACTERISTIC OF THE INVESTMENTS DESCRIBED HEREIN.

THIS MEMORANDUM IS CONFIDENTIAL AND PROPRIETARY AND IS BEING FURNISHED BY THE COMPANY TO PROSPECTIVE INVESTORS IN CONNECTION WITH THE OFFERING OF SECURITIES EXEMPT FROM REGISTRATION UNDER THE ACT SOLELY FOR SUCH INVESTORS' CONFIDENTIAL USE WITH THE EXPRESS UNDERSTANDING THAT, WITHOUT PRIOR WRITTEN PERMISSION FROM THE COMPANY, SUCH PERSONS WILL NOT RELEASE THIS DOCUMENT OR DISCUSS THE INFORMATION CONTAINED HEREIN OR MAKE REPRODUCTION OF OR USE THIS MEMORANDUM FOR ANY PURPOSE OTHER THAN EVALUATION OF POTENTIAL INVESTMENT IN THE SECURITIES. THIS MEMORANDUM IS INDIVIDUALLY DIRECTED TO EACH PROSPECTIVE INVESTOR AND DOES NOT CONSTITUTE AN OFFER TO ANY OTHER PERSON OR TO THE PUBLIC GENERALLY TO SUBSCRIBE FOR OR OTHERWISE ACQUIRE THE SECURITIES OFFERED HEREIN. DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE PROSPECTIVE INVESTOR WHOSE NAME APPEARS ON THE COVER PAGE HEREOF, AND THOSE PERSONS, IF ANY, RETAINED TO ADVISE SUCH PROSPECTIVE INVESTOR WITH RESPECT THERETO, IS UNAUTHORIZED, AND ANY DISCLOSURE OF ANY OF ITS CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY, IS PROHIBITED.

Exhibit __1__ Page __8__

NFS11251

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL OR SOLICITATION IF AN OFFER TO BUY THE SECURITIES IN ANY JURISDICTION WHERE, OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH OFFER OR SOLICITATION IN SUCH JURISDICTION. EXCEPT AS OTHERWISE INDICATED, THIS MEMORANDUM SPEAKS AS OF THE DATE HEREOF. NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY SALE MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY AFTER THE DATE HEREOF.

THE INFORMATION PRESENTED HEREIN WAS PREPARED OR OBTAINED BY THE COMPANY AND IS BEING FURNISHED SOLELY FOR USE BY PROSPECTIVE INVESTORS IN CONNECTION WITH THE OFFERING. THE COMPANY MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. NOTHING CONTAINED HEREIN IS, OR SHOULD BE RELIED ON AS, A PROMISE OR REPRESENTATION AS TO THE FUTURE PERFORMANCE OF THE COMPANY.

THIS MEMORANDUM DOES NOT PURPORT TO BE ALL-INCLUSIVE OR TO CONTAIN ALL THE INFORMATION THAT A PROSPECTIVE INVESTOR MAY DESIRE IN EVALUATING THE COMPANY. EACH INVESTOR MUST CONDUCT AND RELY ON ITS OWN EVALUATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED, IN MAKING AN INVESTMENT DECISION WITH RESPECT TO THE SECURITIES OFFERED HEREBY. INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, BUSINESS OR TAX ADVICE. EACH INVESTOR SHOULD CONSULT SUCH INVESTOR'S OWN ATTORNEY, BUSINESS ADVISOR AND TAX ADVISORS AS TO THE LEGAL, BUSINESS, TAX AND RELATED MATTERS CONCERNING THE INVESTMENT DESCRIBED IN THIS MEMORANDUM AND ITS SUITABILITY FOR SUCH PROSPECTIVE INVESTOR. SEE "CERTAIN RISK FACTORS."

CERTAIN PROVISIONS OF VARIOUS AGREEMENTS ARE SUMMARIZED IN THIS MEMORANDUM, BUT PROSPECTIVE INVESTORS SHOULD NOT ASSUME THAT SUCH SUMMARIES ARE COMPLETE. SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE COMPLETE TEXT OF SUCH AGREEMENTS.

THE INFORMATION CONTAINED HEREIN WAS PREPARED BY THE COMPANY AND IS BEING FURNISHED BY THE COMPANY SOLELY FOR USE BY PROSPECTIVE INVESTORS IN CONNECTION WITH THE OFFERING. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OTHER THAN THAT CONTAINED IN THIS MEMORANDUM, OR TO MAKE ANY REPRESENTATIONS IN CONNECTION WITH THE OFFERING, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT

Exhibit ___1___ Page ___9___

NFS11252

BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. THE COMPANY DISCLAIMS ANY AND ALL LIABILITIES FOR REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, CONTAINED IN OR OMISSIONS FROM, THIS MEMORANDUM OR ANY OTHER WRITTEN OR ORAL COMMUNICATION TRANSMITTED OR MADE AVAILABLE TO THE RECIPIENT. EACH INVESTOR WILL BE ENTITLED TO RELY SOLELY UPON THOSE WRITTEN REPRESENTATIONS AND WARRANTIES THAT MAY BE MADE TO IT IN ANY FINAL PURCHASE AGREEMENT RELATING TO THE UNITS REFERRED TO IN THIS MEMORANDUM.

NO SALE WILL BE MADE TO ANY PERSON WHO CANNOT DEMONSTRATE COMPLIANCE WITH THE SUITABILITY STANDARDS DESCRIBED IN THIS MEMORANDUM. IF YOU ARE IN ANY DOUBT AS TO THE SUITABILITY OF AN INVESTMENT IN THE SECURITIES OF THE COMPANY, DETAILS OF WHICH ARE GIVEN IN THIS MEMORANDUM, YOU SHOULD CONSULT YOUR INVESTMENT ADVISER. NO SUBSCRIPTIONS WILL BE ACCEPTED FROM RESIDENTS OF ANY STATE UNLESS THE COMPANY, UPON CONSULTATION WITH ITS COUNSEL, IS SATISFIED THAT THE OFFERING IS IN COMPLIANCE WITH THE LAWS OF SUCH STATE.

THE COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION AND FOR ANY REASON WHATSOEVER, TO MODIFY, AMEND AND/OR WITHDRAW ALL OR A PORTION OF THE OFFERING AND/OR TO ACCEPT OR REJECT IN WHOLE OR IN PART ANY PROSPECTIVE INVESTMENT IN THE UNITS OR TO ALLOT TO ANY PROSPECTIVE INVESTOR LESS THAN THE UNITS THAT SUCH INVESTOR DESIRES TO PURCHASE. THE COMPANY SHALL HAVE NO LIABILITY WHATSOEVER TO ANY OFFEREE AND/OR INVESTOR IN THE EVENT THAT ANY OF THE FOREGOING SHALL OCCUR.

IT IS THE RESPONSIBILITY OF ANY INVESTOR PURCHASING THE UNITS TO SATISFY ITSELF AS TO FULL OBSERVANCE OF THE LAWS OF ANY RELEVANT TERRITORY OUTSIDE THE UNITED STATES IN CONNECTION WITH ANY SUCH PURCHASE, INCLUDING OBTAINING ANY REQUIRED GOVERNMENTAL OR OTHER CONSENTS OR OBSERVING ANY OTHER APPLICABLE REQUIREMENTS.

THE COMPANY MAY SELECT A BROKER-DEALER OR-DEALERS ("SELECTED DEALERS") THAT ARE MEMBERS OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS AS WELL AS QUALIFIED "FINDERS" AS DEFINED IN SECURITIES LAWS OF THE UNITED STATES TO SELL THE SECURITIES.

EACH OFFEREE MAY MAKE INQUIRIES OF THE COMPANY WITH RESPECT TO THE COMPANY'S BUSINESS OR ANY OTHER MATTER RELATING TO THE COMPANY OR AN INVESTMENT IN THE SECURITIES OFFERED HEREUNDER, AND MAY OBTAIN ANY ADDITIONAL INFORMATION THAT SUCH PERSON DEEMS TO BE NECESSARY IN CONNECTION WITH MAKING AN

NFS11253

INVESTMENT DECISION IN ORDER TO VERIFY THE ACCURACY OF THE INFORMATION CONTAINED IN THIS PRIVATE PLACEMENT MEMORANDUM (TO THE EXTENT THAT THE COMPANY POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE). IN CONNECTION WITH SUCH INQUIRY, ANY DOCUMENT THAT AN OFFEREE WISHES TO REVIEW WILL BE MADE AVAILABLE FOR INSPECTION AND COPYING OR FURNISHED, UPON REQUEST, SUBJECT TO THE OFFEREES' AGREEMENT TO MAINTAIN SUCH INFORMATION IN CONFIDENCE AND TO RETURN THE SAME TO THE COMPANY IF THE RECIPIENT DOES NOT PURCHASE THE SECURITIES OFFERED HEREUNDER. ANY SUCH INQUIRIES OR REQUESTS FOR ADDITIONAL INFORMATION OR DOCUMENTS SHOULD BE MADE IN WRITING TO THE COMPANY ADDRESSED AS FOLLOWS:

NEWPOINT FINANCIAL SERVICES, INC., ATTENTION: GISSOU FARAHI, 499 NORTH CANON DRIVE, BEVERLY HILLS, CALIFORNIA 90210.

**FORWARD-LOOKING STATEMENTS**

CERTAIN STATEMENTS IN THIS MEMORANDUM INCLUDING BUT NOT LIMITED TO STATEMENTS, ESTIMATES AND PROJECTIONS OF FUTURE TRENDS AND OF THE ANTICIPATED FUTURE PERFORMANCE OF THE COMPANY CONSTITUTE "FORWARD-LOOKING STATEMENTS". SUCH FORWARD-LOOKING STATEMENTS INVOLVE KNOWN AND UNKNOWN RISKS, UNCERTAINTIES AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE ACTUAL RESULTS, PERFORMANCE OR ACHIEVEMENTS OF THE COMPANY, OR INDUSTRY RESULTS, TO DIFFER MATERIALLY FROM ANY FUTURE RESULTS, PERFORMANCE OR ACHIEVEMENT IMPLIED BY SUCH FORWARD-LOOKING STATEMENTS.

STATEMENTS IN THIS MEMORANDUM THAT ARE FORWARD-LOOKING, INVOLVE NUMEROUS RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM EXPECTED RESULTS AND ARE BASED ON THE COMPANY'S CURRENT BELIEFS AND ASSUMPTIONS REGARDING A LARGE NUMBER OF FACTORS AFFECTING ITS BUSINESS. ACTUAL RESULTS MAY DIFFER MATERIALLY FROM EXPECTED RESULTS. THERE CAN BE NO ASSURANCE THAT (I) THE COMPANY HAS CORRECTLY MEASURED OR IDENTIFIED ALL OF THE FACTORS AFFECTING ITS BUSINESS OR THE EXTENT OF THEIR LIKELY IMPACT, (II) THE PUBLICLY AVAILABLE INFORMATION WITH RESPECT TO THESE FACTORS ON WHICH THE COMPANY'S ANALYSIS IS BASED OR COMPLETE OR ACCURATE, (III) THE COMPANY'S ANALYSIS IS CORRECT OR (IV) THE COMPANY'S STRATEGY, WHICH IS BASED IN PART ON THIS ANALYSIS, WILL BE SUCCESSFUL.

Exhibit ___/___ Page ___//___

NFS11254

## NASAA UNIFORM LEGEND

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY UPON THEIR OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD, EXCEPT AS PERMITTED UNDER THE SECURITIES ACT, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION THEREUNDER OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## NOTICE REGARDING AGREEMENT TO ARBITRATE

THIS PRIVATE PLACEMENT AGREEMENT REQUIRES THAT ALL INVESTORS ARBITRATE ANY DISPUTE ARISING OUT OF THEIR INVESTMENT IN THE SECURITIES OF THE COMPANY. YOU FURTHER AGREE THAT THE ARBITRATION WILL BE BINDING AND HELD IN SOUTHERN CALIFORNIA. YOU AGREE THEREBY, TO WAIVE ANY RIGHTS TO A JURY TRIAL. OUT OF STATE ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO ARBITRATE A SETTLEMENT OF A DISPUTE. IT MAY ALSO COST YOU MORE TO ARBITRATE IN CALIFORNIA THAN IN YOUR HOME STATE.

THIS MEMORANDUM CONSTITUTES AN OFFER ONLY IF A NAME APPEARS IN THE APPROPRIATE SPACE PROVIDED ON THE FRONT COVER.

The area below is left blank intentionally.

Exhibit _____1_____ Page _____12_____

NFS11255

## SUMMARY OF OFFERING

The Debentures which would be issued on the successful qualification of an investor have not been registered under the Securities Act or any applicable state securities laws and are being sold in reliance upon an exemption from the registration requirements provided by Section 4(2) and/or the Sections under Regulation D promulgated under the Securities Act and similar exemptions from the registration and qualification requirements under state securities laws. **This Offering is unrelated to, and funds shall not be used for or in connection with, the operation of Newpoint Securities, LLC, which is a wholly separate and distinct entity.**

**Securities Being Offered**
**and Amount of Offering:** This Offering is for a total of $20,000,000 in gross proceeds for the sale of Tiered Variable Interest Rate Subordinated Debentures. The minimum purchase amount is $30,000. The Debentures are more fully described in this Memorandum and specimens of the Debentures will be provided upon request of the Company. The Company may increase the amount of this Offering periodically pursuant to a Memorandum Supplement. In the event the Company elects to increase the amount of this Offering, it shall provide notice of such election to existing Investors.

**Investors:** The Debentures will be offered only to investors who meet the standards set by rules limiting offerings in the various states in which the Debentures are being sold and who fall within Federal requirements set forth in Section 4(2) and Rule 506 of Regulation D of the Securities Act of 1933. Generally, such investors will be limited to investors who fall within one of the following three categories: (1) have a preexisting relationship with any of the Company's listed officers or directors, or (2) have sufficient business and financial experience to properly evaluate the risks of the investment or who have a financial advisor/purchaser representative such that they are able to make that evaluation, or (3) qualify as "accredited investors," as defined in Regulation D under the Securities Act. Accredited investors will generally include individuals with a net worth in excess of $1,000,000 or annual income in excess of $200,000 for the two previous years, and corporations and partnerships with assets in excess of $5,000,000. There are other standards by which an investor could qualify as an accredited investor.

Exhibit ___1___ Page _13___

NFS11256

**Interest Payable
on Debentures:**

As of the date of this Memorandum, the outstanding principal balance of the Debentures shall bear interest at the rates stated on the cover pages to this Memorandum, subject to revision based on the prevailing market rate for the applicable maturity period. Purchasers of the Debentures acknowledge that the Company, as a result of having up to $20,000,000 in Debentures outstanding at any time, may be carrying a substantial debt load, which may affect the Company's ability profitability and viability.

Interest shall accrue on the actual number of days elapsed based upon a 365-day calendar year. All interest payments shall be due and payable in full on or before the Maturity Date at the Company's sole discretion.

**Expenses:**

All proposed purchasers of Securities will be responsible for their own costs, fees, and expenses in evaluating and subscribing to this Offering, including but not limited to the costs, fees and expenses of their counsel and other advisors. The purchaser of the Debentures will be required to indemnify and hold harmless the Company for any fees for which such purchaser is responsible given the placement of the Offering, if any.

**Risk Factors:**

An investment in the Debentures is speculative and involves risk. Investors should be able to accept the total loss of their entire investment in the Debentures. Prospective purchasers should carefully review the information set forth under "Risk Factors" as well as all other information contained in this Memorandum. Read this document in full. It is to your benefit to evaluate the risk associated with the Debentures prior to your purchase.

**Broker/Dealer:**

Although the Company may engage an NASD registered member to act on the Company's behalf with respect to the private sale of the Securities there is no such intention at the time of issuance of this Memorandum. As such, there are no commissions or finder's fees associated with the sale of the Securities. If the Company does retain a registered brokerage firm to sell

Exhibit ___1___ Page ___14___

NFS11257

the Securities, the Company is prepared to pay a commission from the sale of the Debentures sold by the Broker-Dealer. **The sale of the Securities shall not be undertaken, nor shall any of the proceeds from sale, be used in connection with or have any relation to Newpoint Securities, LLC.**

**Use of Proceeds:**

The Company expects to receive aggregate gross proceeds from the Offering of approximately $20,000,000, less expenses associated with the Offering including legal fees and accounting fees. See the "Use of Proceeds" section in this Memorandum for further details. The proceeds of this Offering shall be used primarily in connection with mortgage lending activities. **The proceeds of the Offering shall not be used in connection with Newpoint Securities, LLC.**

**The Subscription Agreement:**

The purchase of the Debentures will be made pursuant to the Tiered Variable Interest Rate Subordinated Debenture, a Subscription Agreement and Confidential Investor Questionnaire that will contain, among other things, customary representations and warranties by the Company, certain covenants of the Company, investment representations of the purchaser (including representations that may be required by the Securities Act and applicable state "blue sky" laws) and appropriate conditions to closing, including, but not limited to, qualification of the offer and sale of the Debentures under applicable securities laws. A form of such Subscription Agreement and Confidential Investor Questionnaire shall be delivered along with this Memorandum.

**Lack of Escrow for Offering Proceeds:**

The Company has no intention of placing any of the proceeds raised under this Offering in an escrow account. Instead, the Company plans to utilize the Offering proceeds immediately upon receipt. Investors are therefore urged to consider that, in the event the Company is unable to complete this Offering or is for any reason unsuccessful in carrying out its business plan, there will in all likelihood be no opportunity for investors to receive a return of their investment. For this reason and others, the investment in this Offering is extremely risky and speculative and Investors are urged

Exhibit ___1___ Page__15__

NFS11258

not to invest unless they can afford a complete loss of their investment.

**Offering Period:**    This Offering will terminate at either: 1) the full placement and sale of the Debentures; or 2) the termination date of the Offering which is May 1, 2005, unless extended by the Company at its sole discretion. ("Offering Termination Date"). The Company may extend this Offering, and or increase the amount of this Offering, pursuant to a Memorandum Supplement. In the event the Company extends this Offering or increases the amount of this Offering, the Company shall provide notice thereof to existing Investors.


The area below is left blank intentionally.

Exhibit ___1___ Page___16___

NFS11259

## RISK FACTORS

PROSPECTIVE PURCHASERS SHOULD CAREFULLY CONSIDER THE FOLLOWING RISKS AS WELL AS OTHER INFORMATION CONTAINED IN THIS MEMORANDUM IN EVALUATING AN INVESTMENT IN THE DEBENTURES BEING OFFERED.

This Memorandum contains forward-looking statements that involve known and unknown risks and uncertainties regarding things such as statements of the Company's plans, objectives, expectations and intentions. Actual results could differ materially from those discussed in the forward-looking statements as a result of certain factors, including those listed below and elsewhere in this Memorandum.

The following risk factors should be considered carefully in addition to the other information in this Memorandum before purchasing the Debentures

### Reliance on Key Personnel

The Company's success depends to a large extent upon the continued services of key managerial and technical employees and the ability of the Company to attract and retain qualified personnel. Specifically, the Company is highly dependent on the ability and experience of its executive officers, Gissou Farahi and John Farahi. The loss of either Gissou Farahi or John Farahi would present a significant setback for the Company and could impede the implementation of the Company's business plan. The Company currently operates with four (4) full-time employed brokers representative agents. There is no assurance that the Company will be successful in acquiring and retaining qualified personnel to execute its current plan of operations, which includes (either directly or pursuant to affiliated entities), in addition to mortgage-related investments, 1031 exchanges, real estate activities and business services.

### Control by Founding Stockholders

Gissou Farahi and John Farahi and Farahi Family Trust are the sole owners of the Company's common stock. As a result, upon completion of this Offering, the Company's founders will be able to (i) elect, or defeat the election of the Company's directors (ii) amend or prevent amendment of the Company's Articles of Organization and/or governing documents, (iii) effect or prevent a merger, sale of assets or other corporate transaction and (iv) control the outcome of any other matter submitted to the members, if any, for vote. The extent of ownership by the Company's founders may have the effect of preventing a change of control of the Company or discouraging a potential acquirer from making an offer for the Company.

Exhibit ____1____ Page__17____

NFS11260

### Absence of Public Market; Liquidity of Investment; Certain Tax Matters

There is no public market for the Debentures of NEWPOINT FINANCIAL SERVICES, INC., and no market is expected to develop for the Debentures in the near future. The Debentures are not being registered under the Securities Act or the securities laws of any other appropriate jurisdiction in reliance on exemptions from such registration requirements. Accordingly, an investor may be unable to liquidate an Investment in the Debentures and should be prepared to bear the economic risk of an investment in the Debentures for at least eighteen (18) months (depending on the term of the Debenture). In addition, an investor should be able to withstand the total loss of his or her investment.

### Use of Proceeds May Be Altered

The Company expects to use the net proceeds for general corporate and investment purposes, including unsecured loans to the Company's President and Chief Executive Officer the proceeds of which will be invested in accordance with the strategies described in this Memorandum. The Company may, when the opportunity arises, use an unspecified portion of the net proceeds to acquire or invest in complementary businesses, products and technologies. From time to time, in the ordinary course of business, the Company expects to evaluate potential acquisitions of such businesses, products or technologies. The Company will continue to evaluate the distribution ratios of the Company's cash to determine whether the current levels of investment in any given asset should be changed. As a result, there is no assurance that the Use of Proceeds section of this Private Placement Offering Memorandum will be followed and may be materially changed at any time. Accordingly, management will have significant discretion in applying the net proceeds of this offering. The failure of management to apply such funds effectively could have a material adverse effect on the Company's business, prospects, financial condition and results of operations.

### External Economic Factors

Success can also be affected significantly by changes in local, regional and national economic conditions. Factors such as inflation, labor and energy costs, the availability and cost of suitable employees, fluctuating interests and insurance rates, state and local regulations and licensing requirements can also adversely affect the Company. Since September 11, 2001, we have learned that certain acts beyond the control of any person such as terrorist acts could have immediate and severe impact on investments such as the one contemplated in this Offering. Investors should understand that such acts might happen again in the near future and that such acts could seriously and negatively impact the value of an investment in the Company.

### Terms of Debentures

Exhibit __1__ Page __18__

NFS11261

The terms of the Debenture(s) have been determined arbitrarily by the Company's founder based upon the founder's valuation of the Company and its potential revenue streams. Such terms are not based upon book value, earnings, assets or any other recognizable standard of value. No assurance is or can be given that the Debentures, if transferable, could be sold for the price aid or for any amount. If profitable results are not achieved from the Company's operations, of which there can be no assurance, the value of the Debentures sold pursuant to this Offering could fall below the offering price.

**Risks Regarding Forward Looking Statements**

The statements contained in this Private Placement Memorandum which are not historical facts are "forward-looking statements" (as defined in the Private Securities Litigation Reform Act of 1995), which can be identified by the use of forward-looking words such as "believes," "expects," "may," "will," "should," or "anticipates" or the negative thereof or other variations thereon or comparable words, or by discussion of strategy that involve risks and uncertainties. Management wishes to caution the reader that these forward-looking statements, including, without limitation, statements regarding the development of the Company's business, the markets for its services, the Company's anticipated sources of financing and capital expenditures, future regulation for the Company's business and other statement contained herein regarding matters that are not historical facts, are only predictions. No assurance can be given that such predictions will prove correct or that the anticipated future results will be achieved; actual events or results may differ materially, either because on or more of such predictions proved to be erroneous, or as a result of risks facing the Company. Such risks include, but are not limited to, the Company's ability successfully to market its services to new customers, its ability to manage growth, to obtain required permits and authorizations in a timely manner, and regulatory, legislative and judicial developments that could cause actual results to differ materially from the future results indicated, expressed, or implied in such forward-looking statements.

The area below is left blank intentionally.

14

Exhibit ___1___ Page ___19___

NFS11262

## ESTIMATED USE OF PROCEEDS

The Company anticipates that net proceeds to the Company from this Offering after deducting estimated Offering expenses including legal, accounting and other Offering expenses from the gross raise of $20,000,000 and assuming that all Debentures are sold by an agent of the Company (as opposed to a broker-dealer) will total $19,965,000. The Company anticipates that the net proceeds will be applied as set forth below. However, there are no assurances that the Company will use the proceeds as described. See "Risk Factors - Use of Proceeds."

The Company expects to use the net proceeds from this Offering (assuming full subscription) as follows:

| Description of Use | Amount | Percentage |
|---|---|---|
| Purchase Existing Mortgages | $4,000,000 | 20.03% |
| New Mortgages | $5,000,000 | 25.04% |
| Investments (other mortgages, loans (secured and unsecured) and other investments)* | $10,965,000 | 54.82% |
| **TOTAL** | **$19,965,000** | **100%** |

\* Investments may include but are not limited to the purchase and sale of real estate, unsecured assets, business interests, debt and other instruments and assets..

The amounts set forth above represent the Company's present intentions for the use of the net proceeds from the Offering assuming all Debentures are sold. However, actual expenditures could vary depending upon several factors, including without limitation opportunities for possible mergers or consolidations of companies in complementary businesses, changes in economic conditions, unanticipated complications, or delays and expenses. Any reallocation of the net proceeds of the Offering will be made at the discretion of Management but will be in furtherance of the Company's strategy to achieve growth and profitable operations.

The foregoing represents the Company's best current estimate of its likely use of the net proceeds of this Offering. The Company reserves the right to utilize the net proceeds of this Offering differently than set forth above as circumstances may warrant.

Exhibit ____/____ Page___20___

NFS11263

## DESCRIPTION OF COMPANY'S CAPITAL STOCK

The following description of the Company's capital stock is qualified in its entirety by reference to the Company's Articles of Incorporation and By-Laws, which may be obtained on request from the Company.

**General.** The Company's authorized capital stock consists of Two Thousand Five Hundred (2,500) shares of Common Stock with no par value. As of the date of this Memorandum, the Company has Two Thousand Five Hundred (2,500) shares of Common Stock issued and outstanding.

**Common Stock.** The Company is authorized to issue up to Two Thousand Five Hundred (2,500) shares of Common Stock. As of the date of this Memorandum, the Company has Two Thousand Five Hundred (2,500) shares of Common Stock outstanding held of record by one (1) shareholder. The holders of the Common Stock are entitled to receive ratably dividends when, as, and if declared by the Board of Directors out of funds legally available therefore, subject to any preferential dividend rights of outstanding preferred stock, if any. The Company has never paid a dividend on the Common Stock and has no plans to do so in the immediate future. Upon the liquidation, dissolution, or winding up of the Company, the holders of the Common Stock are entitled to ratably receive the net assets of the Company available after the payments of all debts and other liabilities and subject to the prior rights of any outstanding preferred stock, if any. However, there are no assurances that upon any such liquidation or dissolution, there will be any net assets to distribute to the holders of the Common Stock.

The holders of the Common Stock are entitled to one vote per share, either in person or by proxy, on all matters submitted to a vote of shareholders. There is no provision for cumulative voting with respect to the election of directors by the holders of common stock. Therefore, the holders of more than Fifty Percent (50%) of the Company's shares of outstanding common stock can, if they choose to do so, elect all of the Company's directors and approve significant corporate transactions. The holders of the Common Stock have a preemptive right, granted on uniform terms and conditions prescribed by the board of directors to provide a fair and reasonable opportunity to exercise the right, to acquire proportional amounts of the Company's unissued shares upon the decision of the board of directors to issue them. There is no preemptive right with respect to: (i) shares issued as compensation to directors, officers, agents, or employees of the Company, its affiliates or subsidiaries; (ii) shares issued to satisfy rights of conversion or options created to provide compensation to directors, officers, agents or employees of the corporation, its affiliates or subsidiaries, and (iii) shares sold otherwise than for money. The holders of the Common Stock have no subscription or redemption rights. The outstanding shares of Common Stock are fully paid and non-assessable. The rights and privileges of the holders of the Common Stock are subject to, and may be adversely affected by, the rights of the holders of shares of any series of preferred stock that the Company may designate and issue in the future.

Exhibit _____1_____ Page__2/__

NFS11264

# DESCRIPTION OF DEBENTURES

The Company intends to sell an aggregate of $20,000,000 in Tiered Variable Interest Rate Subordinated Debentures during the period beginning May 1, 2003, and ending May 1, 2005. The interest rates associated with these Debentures is a Tiered Variable Interest Rate based on the term of the debentures and the Maturity Date which is determined by the Company at its sole discretion. As of the date of this Memorandum, the outstanding principal balance of the Debentures shall bear interest at the rates stated in Exhibit A to this Memorandum, subject to revision based on the prevailing market rate for the applicable maturity period. Interest shall accrue on the actual number of days elapsed based upon a 365-day year. All interest shall be due and payable in full on or before the Maturity Date at the Company's sole discretion.

## Restricted Securities and Limitations on Transferability

No present market exists for the Debentures. The Securities have not been registered for sale under the 1933 Act or registered or qualified under the securities laws of any state, in reliance upon available exemptions from such registration and qualification requirements. The exemptions from registration and/or qualification relied upon by the Company for this Offering may be dependent, in part, upon the "investment intent" of the investor and would not be available if any investor was acquiring the securities with a view to further sale or distribution. Accordingly, each investor when executing a Subscription Agreement for the Debentures will be required to represent that the purchase is for investment, for such investor's own account, and without any view to the sale or distribution thereof. The Securities cannot be resold unless they are subsequently registered and/or qualified, or there are available exemptions from such registration and/or qualification requirements. The Company reserves the right to require an opinion of legal counsel satisfactory to it regarding the availability of resale exemptions to be provided by a proposed seller of such securities.

INVESTORS CONTEMPLATING A PURCHASE OF THE SECURITIES OFFERED HEREBY SHOULD SEEK THEIR OWN INDEPENDENT LEGAL ADVICE REGARDING THE EFFECT OF THESE RESTRICTIONS AND INVESTMENT REPRESENTATIONS.

# THE COMPANY

The Company and its affiliates in several types of business opportunities and services including real estate brokerage and mortgage services, tax planning services, and 1031 exchanges.

Exhibit ___/___ Page 22

NFS11265

## BUSINESS

**NEWPOINT FINANCIAL SERVICES, INC.** and its affiliates (as listed below) have identified the following potential revenue streams:

1. Revenues derived from real estate activities (Newpoint Mortgage Banker, Inc., and Newpoint Real Estate Services, Inc.);

2. Revenues derived from 1031 exchange activities (1031 Exchange of California); and

3. Revenues derived from tax planning services (Newpoint Accounting & Tax Services, Inc.), and from other business opportunities which the Company will identify and invest.

The Company and its executive officers (primarily Gissou Farahi) will have sole discretion when evaluating and analyzing which business opportunities in which the Company will invest. As a holder of the Debenture(s), investors will have no power or opportunity to participate in this decision making process.

## STRATEGY

The Company's objective is to combine and capitalize on the advantages that are presented by virtue of its reputation in the community, and its ability to identify, analyze and participate in business opportunities including but not limited to mortgage services, 1031 exchanges, real estate, business opportunities and other leveraged investments. To this end, the Company has developed a highly focused strategy which includes the following key elements:

*Further Develop Brand Recognition.* NEWPOINT FINANCIAL SERVICES, INC., believes that creating brand recognition is critical to attracting consumers for the Company's growth and success. The Company intends to continue to differentiate itself from competitors by offering a full range of benefits and services. The process of creating name brand recognition has been done through community based ethnic media including television, the Internet, radio and print media. To that end, the Company has acquired and will promote the Newpoint Financial website.

*Continue Diversified Investment Strategy.* Through its affiliates Newpoint Mortgage Banker, Newpoint Real Estate Services, Newpoint Accounting & Tax Services and 1031 Exchange of California, the Company offers a variety of business services, including investments, 1031 exchanges, real estate activities and other business services.

*Foster Strategic Relationships.* NEWPOINT FINANCIAL SERVICES, INC., has established strategic arrangements with partners such as Washington Mutual Bank, Wells Fargo Bank as an approved broker--who will provide knowledge, experience and financial resources appropriate to a specific opportunity and who will enhance the

18

Exhibit ___1___ Page __23__

NFS11266

Company's ability to leverage resources and thereby achieve significant penetration in particular markets.

The Company's strategy and current and future marketing plans are subject to change as a result of a number of factors, including progress or delays in the Company's expansion efforts, changes in Internet industry and technologies, the nature of possible customer arrangements which may become available to it in the future and competitive factors. There can be no assurance that the Company will be able to successfully expand its operations.

## MANAGEMENT

**NEWPOINT FINANCIAL SERVICES, INC.** The Company is currently operated by Gissou Farahi and John Farahi. In addition to its existing management, the Company intends to recruit key management personnel, administrative staff and advisory board members, including an experienced Chief Executive Officer and Chief Financial Officer.

**Gissou Farahi** is primarily involved in the management of the Company. Mrs. Farahi has over fifteen years experience in real estate and mortgage services. She possesses expertise in the provision of mortgages, and uses this expertise in her management of the Company. She has been involved in real estate management, operating real estate, and the purchase and sale of real estate. She has been responsible for generating in excess of $4 million in gross revenues from the management of real estate.

**John Farahi** is the Treasurer and Corporate Secretary of the Company. Mr. Farahi possesses over twenty-five years experience in the areas of business planning, real estate and budgeting/control for municipalities and counties, and has been a real estate broker since 1981. By request of the Mayor of Reno, Nevada, he took an active role in forming the Finance Committee for the City of Reno, which was involved with budgeting, analyzing, reforming and synthesizing bond issues and investment projects for the city. Shortly thereafter, Mr. Farahi was named Chairman of the Planning Commission, where he formed the Regional Planning Commission for Washoe County in Nevada. This Commission dealt with bonding issues and investment objectives for the entire county. Mr. Farahi next served as a Reno City Councilman and was active on the Board of Health, Redevelopment Agency and the Commission of Aging. As Councilman, he worked with the Redevelopment Agency to form revenue, taxation and investment strategies for the city and for downtown revitalization. He also established pension fund investment strategies for city employees and prepared budgets for all municipality departments , including the police and fire departments. Mr. Farahi has a Bachelors degree in Business Management from the University of California, Hayward. Mr. Farahi has recently been awarded the National Leadership Award from the National Republican Congressional Committee for his public service and leadership in the business community.

Exhibit _____1_____ Page___24___

NFS11267

## PRINCIPAL SHAREHOLDERS

The following table sets forth, as of the date of completion of this Memorandum, the legal and/or beneficial ownership of management and of any person or group known to hold more than 5% of the common stock (voting securities) of the Company. The third column indicates percentage ownership assuming that the Offering is fully subscribed.

| Name of Owner | Percentage Ownership |
|---|---|
| Gissou Farahi, John Farahi and the Farahi Family Trust | 100% |
| **Total** | **100%** |

## INDEMNIFICATION OF OFFICERS AND DIRECTORS

The Articles of Incorporation of the Company provide that to the fullest extent permitted by Nevada law the officers and directors of the Company shall not be personally liable in monetary damages to either the Company or its members for breaches of their fiduciary duty as directors, and further provide that to the fullest extent permitted by Nevada law the Company may indemnify officers, directors and agents of the Company against monetary damages for breach of their duty to the Company or its members.

Management of the Company has indicated that it intends to offer indemnity agreements consistent with the foregoing to all officers and directors of the Company. In this regard, investors should be aware of the position of the United States Securities and Exchange Commission respecting such indemnification, which position is as follows: "Insofar as indemnification for liabilities arising under the Securities Act of 1933 (the "Act") may be permitted to directors, officers and controlling persons of the small business issuer pursuant to the foregoing provisions, or otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable."

## EXECUTIVE COMPENSATION

Officers and directors receive compensation as determined by the Management from time to time. **The Company has not paid or accrued compensation thus far.** The Company does not currently have a written employment agreement with any of its employees, including Gissou Farahi and John Farahi. However, it is the Company's intention to enter into exclusive full time employment agreements with its management

Exhibit _____1_____ Page___25___

NFS11268

team upon the successful completion of this Offering. Such agreements may include bonus provisions and provisions for annual increases in income depending on negotiations with the parties involved. As a result, the compensation provided to any employee of the Company may impact the Use of Proceeds from this Offering and such Use of Proceeds may be amended at any time by the Company for such purpose.

**Director Compensation**

Other than reimbursement for expenses, the Company does not provide compensation for non-employee directors and has no present plan to provide for such compensation.

## DETERMINATION OF THE OFFERING PRICE

There is no established market for the Debentures being offered. The offering price of the securities has been determined arbitrarily by the Company and was not based upon book value, earnings, assets or any other recognizable standard of value. Factors considered in determining such prices included the nature of the Offering, the financial position of the company, an assessment of the Company's management and an estimate of the Company's business potential.

## TRADEMARKS AND OTHER INTELLECTUAL PROPERTY

The Company has no trademarks or service marks on any of its intellectual property at the time of this Offering. The Company does intend to file for trademark protection for its marks in the future, if possible.

## LITIGATION AND ADMINISTRATIVE PROCEEDINGS

There are no lawsuits, claims or administrative proceedings involving the Company or a Company affiliate believed to be material to the development of the Company's business objectives or the success of the Offering.

## CONFLICTS OF INTEREST

Gissou Farahi is involved in the management of 1031 Exchange of California, Newpoint Mortgage Banker, Inc., Newpoint Real Estate Services, Inc., and Newpoint Accounting and Business Services, Inc. John Farahi is President of 1031 Exchange of California, Newpoint Mortgage Banker, Inc., Newpoint Real Estate Services, Inc., and Newpoint Accounting and Business Services, Inc., and the managing director of Newpoint Securities, LLC. This Offering is unrelated to, and funds shall not be used for or in connection with, the operation of Newpoint Securities, LLC, which is a wholly separate and distinct entity. John Farahi and/or Gissou Farahi may from time to time take personal loans from the Company which are payable under short terms with interest due

Exhibit ___/___ Page ___26___

NFS11269

on payment. Such loans may create a conflict in that John Farahi and Gissou Farahi are the controlling persons effectively managing this Offering and its proceeds. However, the Company, John Farahi and Gissou Farahi believe such conflict can be managed through arms-length transactions and negotiations occurring with professional representatives of the parties.

The Company is not subject to any other conflicts of interest arising out of its relationships with the Board of Directors and their affiliates.

## Board Members

Some of the Members of the Board of Directors may be employed by other companies or sit on the boards of other entities and as such a conflict may arise in such dual employment and/or duties. It is not anticipated that such conflict will materially effect the Company.

## EMPLOYEES

As of June 30, 2004, the Company and its affiliates had 2 employees and 12 independent contractors. The Company's employees are not a part of a collective bargaining agreement. The Company believes that its relations with its employees are satisfactory.

## FACILITIES

The Company's executive offices in the State of California are located at 499 North Canon Drive, Beverly Hills, California 90210. The lease at this location is approximately $10,000 per month and is for a total three (3) year commitment with options for extension available. The Company does intend to move executive office locations within the next twelve (12) months and may use a portion of the proceeds from this Offering for the purchase of real estate and a building for such office space.

## TERMS OF THE OFFERING

### PLAN OF DISTRIBUTION

**NEWPOINT FINANCIAL SERVICES, INC.**, a Nevada corporation (the "Company") is offering an aggregate of $20,000,000 in Tiered Variable Interest Rate Subordinated Debentures (the "Debentures") to Accredited Investors, as that term is defined in Rule 501 promulgated under the Securities Act of 1933, as amended (the "1933 Act"). The Offering will consist of a maximum of $20,000,000 with a minimum purchase amount of $30,000 (the "Offering"). The terms associated with the Subordinated Debenture(s) has been arbitrarily determined by the Company and does not necessarily bear any relationship to the Company's book value, assets, past operating results, financial condition, generally accepted accounting principles, or any other

Exhibit _1_ Page _27_

NFS11270

established criteria of value. See "Terms of the Offering - Plan of Distribution," "Risk Factors - Arbitrary Determination of Offering Price," and "Description of Securities - Determination of Offering Price."

There is currently no public market for the Company's Debentures and there can be no assurances that such a market will ever be developed. The primary purpose of the Private Placement Offering is to help facilitate future capital raising efforts of the Company by expanding the business operations of the Company through the completion of the transactions contemplated by the Private Placement Offering. See "Terms of the Offering," "Risk Factors" and "Description of Company's Securities."

The Debentures are being offered on a "best efforts" basis. As determined by the Company, the Debentures will be sold through officers and directors of the Company and may be sold through a broker-dealer who is a member of the National Association of Securities Dealers, Inc. The broker-dealer participating in the offering may receive a commission up to ten percent (10%) of the gross proceeds plus non-accountable expense items and due diligence fees which may also be based on gross proceeds from Debentures sold by such broker-dealer, and may, at the Company's discretion, be indemnified by the Company against certain civil liabilities, including liabilities arising under the Securities Act of 1933, as amended.

The minimum initial investment for a purchaser will be $30,000. These Debentures are suitable for investment only by prospective investors who meet the qualifications of an "Accredited Investor," as defined in Regulation D promulgated under the 1933 Act, as described below under "Investor Suitability Standards."

Attached as Exhibit B to this Private Placement Memorandum is a Subscription Agreement (the "Subscription Agreement") for persons interested in subscribing for the Debentures. Persons subscribing for the Debentures (a "Prospective Debenture holder") must complete the Subscription Agreement and should send a check to the Company, in the amount of their proposed purchase, made payable to:

**"NEWPOINT FINANCIAL SERVICES, INC"**

Checks should be delivered, along with all other required documents to the Company at:

**NEWPOINT FINANCIAL SERVICES, INC.**
**499 North Canon Drive**
**Beverly Hills, California 90210.**

The Company will determine whether to accept or reject subscriptions within thirty (30) days of the receipt from a Prospective Debenture holder of a properly executed copy of the Subscription Agreement and a check for the securities purchased. In the event the Company rejects a Prospective Debenture holder's subscription offer, the Company

23

NFS11271

will cause all funds received from a Prospective Debenture holder to be promptly returned.

The Subscription Agreement sets forth certain terms and conditions regarding an investment in the Securities. In addition, the Subscription Agreement contains representations and warranties of the Prospective Debenture holder that will be relied upon by the Company in complying with its obligations under the applicable securities laws. Therefore, care should be taken in reading and completing the Subscription Agreement to insure accuracy and completeness.

## SUITABILITY STANDARDS

Investment in the securities of the Company involves substantial risk. There will be no public market for the securities. Also, sale or other disposition requires prior written consent of the Company until and such securities become registered under the federal and state securities laws. To the extent they do not become registered under the federal and state securities laws, the securities cannot be transferred unless they comply with one of the federal exemptions that permit the transfer of restricted securities and with the appropriate state securities laws. Accordingly, investment in the securities referred to in this Memorandum is suitable only for person of adequate financial means who have no need for liquidity with respect to their investment and who are capable of suffering a loss of their entire investment in any securities purchased.

A suitable investor is one who meets the conditions set forth above and whom the Company immediately prior to sale and upon making reasonable inquiry, shall have reasonable grounds to believe, and does believe:

1) Is acquiring the Debentures for investment and not with a view to resale or distribution;

2) Can bear any economic risk incident to holding the Securities;

3) Recognizes the restrictions on transferability of the Securities, has adequate means of providing for his current financial needs and possible personal contingencies, has no need for liquidity of this investment and has no reason to anticipated any change in his personal circumstances, financial or otherwise, which might cause him to attempt to resell or transfer his securities;

4) Is familiar with the nature and risks attending investments in privately offered securities, and has determined that the purchase of the securities is consistent with his forecasted income and investment objectives;

5) Is aware that no trading market for his securities is likely to exist at any time and that his securities will at no time be freely transferable unless the stock is registered pursuant the federal securities laws; and,

24

6) Satisfies the applicable state law suitability requirements of the state of the investor's residence.

Each investor will also be required to represent that he has been furnished, has carefully read and has relied solely on the information contained in this Memorandum, including all exhibits, amendments and supplements hereto.

Further, Debentures will be offered for sale only to persons who the Company has reasonable grounds to believe are qualified investors. The Company will request that prospective investors and /or their Purchaser Representatives complete a questionnaire and may require that such persons furnish other information.

Securities will be sold to accredited investors and no more than 35 investors who are not "accredited investors" as that term is defined in 17 CFR section 230.501(a). Among the categories of persons who are defined as accredited investors in 17 CFR section 230.501 (a) are the following: natural persons who have a personal net worth or joint net worth with a spouse (including homes, furnishings and automobiles) in excess of $1,000,000; or natural persons who have had an annual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and who reasonably expect an income of the same level in the current year. Corporations, partnerships, trusts and other entities may be deemed accredited investors if all of their equity holders are accredited investors. Investors who are not accredited investors must have such knowledge and experience in financial or business matters (alone or in connections with a purchaser Representative) that they are capable of evaluation the merits and risks of the prospective investment.

To be an accredited investor, an investor must fall within any of the following categories at the time of the sale of the Debentures to that investor:

(1) A bank as defined in Section (3)(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; an insurance company as defined in Section 2(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940 (the "Investment Company Act") or a business development company as defined in Section 2(a)(48) of the Investment Company Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of

NFS11273

$5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

(3) An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets of $5,000,000;

(4) A director or executive officer of the Company;

(5) A natural person whose individual net worth, or joint net worth with the person's spouse, at the time of such person's purchase of the securities offered, exceeds $1,000,000;

(6) A natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those two years and has a reasonable expectation of reaching the same income level in the current year;

(7) A trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of Regulation D; and,

(8) An entity in which all of the equity owners are accredited investors (as defined above).

As used in this Memorandum, the term "net worth" means the excess of total assets over total liabilities. In computing net worth for the purpose of (5) above, the principal residence of the investor must be valued at cost, including the cost of improvements, or at recently appraised value by an institutional lender making a secured loan, net of encumbrances. In determining income, an investor should add to the investor's adjusted gross income any amounts attributable to tax-exempt income received, losses claimed as a limited partner in any limited partnership, deductions claimed for depletion, contributions to an IRA or KEOGH retirement plan, alimony payments, and any amount by which income from long-term capital gains has been reduced in arriving at gross income.

The requirements above are the requirements to meet the accredited investor standard. Pursuant to the federal securities laws, the Company can have an unlimited number of accredited investors, however, to the extent that an investor does not qualify as an accredited investor the company is limited to 35 non-accredited investors. Thus, it is possible that the Company will be unable to accept your subscription if you are not an accredited investor, and the company has acquired 35 non-accredited investors before you submit your offer to subscribe for the Company's securities. In addition, in

Exhibit ___1___ Page _31___

NFS11274

order to meet the conditions for exemption from the registration requirements under the securities laws of certain jurisdictions, investors who are residents of such jurisdictions may be required to meet additional suitability requirements beyond those set forth above.

The suitability standards referred to above represent minimum suitability requirements for prospective purchasers, and the satisfaction of such standards by a prospective purchaser does not necessarily mean that a Debenture or Debentures are suitable investment for such person. The Company, in circumstances it deems appropriate, may modify such requirements.

The above-described representations from prospective investors will be reviewed to determine the suitability of the Debentures of prospective investors, and the Company will have the right to refuse a subscription for Debentures if, in its discretion, it believes the prospective investor does no meet the applicable suitability standards or the Debentures are otherwise an unsuitable investment for the prospective investor. Subscriptions will not necessarily be accepted in the order received by the Company.

## SUBSCRIPTION PROCEDURES

In order to subscribe for the Securities offered hereby, each prospective investor will be required to deliver to the Company, a check payable to **"NEWPOINT FINANCIAL SERVICES, INC."** in the amount of a minimum of $30,000 for the purchase of the Debentures. In addition, the prospective investor must complete, execute, and deliver the following to the Company:

(1)  A dated and fully executed Subscription Agreement and Confidential Purchaser Questionnaire (the "Subscription Agreement and Investor Representations"). These documents include certain representations by such investor relating to such investor's subscription;

(2)  If the prospective investor is subscribing for Debentures on behalf of an entity (i.e., other than an individual), the investor shall supply the Company with a properly executed instrument authorizing the purchase by the agent on behalf of the entity; and

(3)  Cash or check payable to: **"NEWPOINT FINANCIAL SERVICES, INC.**, with a minimum purchase of $30,000.

Subscription Agreements are not binding upon the Company until accepted by the Company, which reserves the right to reject, in whole or in part, in its sole discretion, any Subscription Agreement. If the Company rejects all or a portion of any subscription, the Company will promptly mail to the subscriber a check for all, or the appropriate portion of, the amount submitted with such subscriber's subscription.

27

NFS11275

Foreign investors may be required to execute additional and/or different subscription documentation.

The Certificates for the shares will be delivered to the purchaser immediately upon acceptance of the Subscription Agreement by the Company.

## APPENDICES

---

**EXHIBIT A**    **INTEREST RATE SCHEDULE**

**EXHIBIT B**    **SUBSCRIPTION AGREEMENT AND CONFIDENTIAL PURCHASER QUESTIONNAIRE**

Exhibit __1__ Page _33_

NFS11276

## TABLE OF CONTENTS

INVESTOR NOTICES.......................................................................... 2
NASAA UNIFORM LEGEND ........................................................... 7
NOTICE REGARDING AGREEMENT TO ARBITRATE ............................ 7
SUMMARY OF OFFERING .............................................................. 8
RISK FACTORS ............................................................................ 12
ESTIMATED USE OF PROCEEDS...................................................... 15
DESCRIPTION OF SECURITIES......................................................... 16
THE COMPANY ........................................................................... 17
BUSINESS................................................................................... 18
MANAGEMENT.............................................................................. 19
PRINCIPAL SHAREHOLDERS .......................................................... 20
INDEMNIFICATION OF OFFICERS AND DIRECTORS ........................... 20
EXECUTIVE COMPENSATION........................................................... 20
TRADEMARKS AND OTHER INTELLECTUAL PROPERTY.................... 21
LITIGATION AND ADMINISTRATIVE PROCEEDINGS ......................... 21
CONFLICTS OF INTEREST............................................................... 21
EMPLOYEES ................................................................................ 22
FACILITIES ................................................................................. 22
TERMS OF THE OFFERING.............................................................. 22

THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
("MEMORANDUM") CONTAINS ALL OF THE REPRESENTATIONS BY THE
COMPANY CONCERNING THIS OFFERING, AND NO PERSON SHALL BE
AUTHORIZED TO MAKE ANY DIFFERENT OR BROADER STATEMENTS THAN
THOSE CONTAINED IN THIS MEMORANDUM. INVESTORS ARE CAUTIONED
NOT TO RELY UPON ANY INFORMATION NOT CONTAINED IN THIS
MEMORANDUM.

Exhibit ___1___ Page _34_

NFS11277