Gary S. Lincenberg - State Bar No. 123058
　gsl@birdmarella.com
David I. Hurwitz - State Bar No. 174632
　dih@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
　NESSIM, DROOKS & LINCENBERG P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Farahi

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　Plaintiff,<br><br>vs.<br><br>NEWPOINT FINANCIAL SERVICES, INC., JOHN FARAHI; GISSOU RASTEGAR FARAHI; and ELAHEH AMOUEI,<br><br>　　　Defendants.<br><br>　　and<br><br>TRIPLE "J" PLUS, LLC<br><br>　　　Relief Defendant. | CASE NO. CV 10-0124 DDP (JEMx)<br><br>**DEFENDANT JOHN FARAHI'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY MARCH 17, 2010 PRELIMINARY INJUNCTION ORDER AND ORDERS TO RELEASE FUNDS TO PAY LIVING EXPENSES AND ATTORNEY'S FEES**<br><br>Date: April 19, 2010<br>Time: 10 a.m.<br>Judge: Hon. Dean D. Pregerson |

280262.1

MEMORANDUM ISO MOTION TO MODIFY ASSET FREEZE ORDER

## I. INTRODUCTION

On January 8, 2010, the Court entered a Temporary Restraining Order ("TRO") on the application of the Securities and Exchange Commission (the "SEC") that among other things, froze all of the assets of defendant John Farahi and appointed a temporary receiver over his business and primary source of income. Since the entry of the TRO, Farahi has stipulated to the appointment of a permanent receiver, entered into a bifurcated settlement with the SEC, and cooperated with the receiver by answering questions and locating requested documents. On March 17, 2010, the Court entered a Preliminary Injunction Order and Orders freezing Farahi's assets.

Farahi has requested that the SEC and the receiver agree to release personal assets so that he can pay living expenses for himself and attorney's fees during the pendency of these proceedings. The SEC has refused Farahi's requests to stipulate to a reasonable amount of living expenses. Accordingly, Farahi applies to the Court to modify the March 17, 2010 Order to release funds for his monthly living expenses in the amount of $5,500, his expenses of $3,400 to preserve the house, and his attorney's fees.

## II. THE COURT SHOULD RELEASE FUNDS FOR LIVING EXPENSES

The TRO itself provides for "an allowance for necessary and reasonable living expenses to be granted only upon good cause shown by application to the Court with notice to and an opportunity for the Commission to be heard." (TRO at 4:17-20.) This Court has the authority to modify the asset freeze so that Farahi can reasonably support himself during the pendency of these proceedings. *See SEC v. Private Equity Management Group, Inc.*, 2009 WL 2058247, at *3 (C.D. Cal. Jul. 9, 2009); *SEC v. McMillan*, 2006 U.S. Dist. LEXIS 89150, at *1 (D. Ariz. Dec. 7, 2006); *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854-55 (W.D. Va. 2001); *SEC v. Coates*, 1994 WL 455558, at *2 (S.D.N.Y. Aug. 23, 1994). *SEC v. Scott, Gorman Municipals, Inc.*, 407 F. Supp. 1383, 1388 (S.D.N.Y. 1975) (order freezing assets

"except for ordinary living expenses").

The Court has discretion to release funds for living expenses and to determine the amount. In exercising its discretion, the Court may consider whether Farahi has personal assets that are separate from the investors' assets, whether he has any income, and whether his requested living expenses are reasonable under the circumstances. *Private Equity Management Group*, 2009 WL 2058247, at *3, citing *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001). Those cases where courts have denied requests for living expenses have involved defendants who could not show untainted assets, had other sources of income, had requested funds for luxuries, or had not supported their requests for living expenses with competent evidence. *Private Equity Management Group*, 2009 WL 2058247, at *4 (request for $27,000 per month denied as unreasonably high, unsubstantiated, and no source of untainted funds); *Coates*, 1994 WL 455558, at *2 (request denied where receiver already paying $12,000 per month to defendant and his family).

Farahi's application should be granted here because: (1) he has personal assets that are separate from the assets of NewPoint and the NewPoint investors; (2) he has had no source of income since the TRO shut down his business; and (3) his request is reasonable and supported by competent evidence.

### A.   Farahi Has Untainted Personal Assets

Farahi seeks to release personal assets that are not tainted by the allegations concerning NewPoint. These are assets that Farahi purchased with his own personal funds or monies borrowed on his own personal line of credit.

Untainted assets include his 10% interest in the Sunset Carson City Apartments limited partnership, which owns an apartment building in Carson City, Nevada. Farahi invested in this limited partnership in 1978 or 1979, more than 20 years before anyone invested in NewPoint and more than 30 years before the entry of the TRO, and he has held this interest continuously to the present day. (Farahi Decl. ¶ 2.) Farahi is a limited partner in this entity and has no managerial role.

(*Id.*)  Farahi estimates he could sell his limited partnership interest for between $25,000 and $30,000 if the Court permits him to do so. (*Id.*)   The Court should modify the asset freeze to permit Farahi to sell his limited partnership interest in Sunset Carson City Apartments and draw against the sale proceeds for his reasonable living expenses.

Farahi also has untainted funds from a $1.688 million personal federal income tax refund he received from the Internal Revenue Service in two installments on November 5, 2009 and November 12, 2009.  (*Id.* ¶ 3.)  This federal tax refund is the property of John and Gissou Farahi individually.  The refund came from the federal treasury, not from NewPoint or any investors.  Farahi deposited the federal tax refund into his Farahi Family Trust account at Sun West Bank and into his personal account at Wells Fargo Bank.  On November 20, 2009, Farahi transferred $100,000 from his Sun West Bank account to another account at Sun West Bank in the name of Winners Realty Inc., a corporation that he owns and controls.  (*Id.* ¶ 5.)  Approximately $86,000 of this $100,000 deposit was still in that account when it was frozen by the TRO.  (*Id.*)  The Court should modify the TRO to permit Farahi to draw against the funds in the Winners Realty Sun West bank account for his reasonable living expenses.

Farahi owns a Ferrari 612 that he would sell to provide funds for the receiver and for his living expenses.  Farahi purchased the car with his own money; no NewPoint or investors funds were used to purchase the car.  (*Id.* ¶ 6.)  Farahi requests that the Court modify the asset freeze so that he can sell the car, give sixty percent of the proceeds to the receiver, and deposit the remaining forty percent to draw against for living expenses as approved by the Court.

Farahi also owns a boat indirectly through SeaRunner LLC, a limited liability company that he owns and controls.  (*Id.* ¶ 7.)   He purchased the boat with his own money and with funds borrowed on his personal line of credit, and subsequently refinanced the boat with a secured loan.  (*Id.*)   Farahi is in the process of conveying

his interest in SeaRunner to the receiver so that the receiver may sell the boat. Farahi requests the Court to enter an order directing the receiver to pay his living expenses (not to exceed forty percent of any net proceeds received from the sale of the boat) if and to the extent there are no other unfrozen funds available for him to draw living expenses.

### B. Farahi Has Earned No Income Since the TRO.

Farahi's only sources of income were the investment businesses that were frozen by the TRO. (*Id.* ¶ 8.) Since the TRO, neither John Farahi nor Gissou Farahi has had a job or received any other income. (*Id.*) During this period, Farahi has been occupied with defending this action and cooperating with the receiver without compensation. The absence of any source of income to pay living expenses strongly favors the release of untainted funds for support. *Coates*, 1994 WL 455558, at *2 (request denied where receiver paid defendant monthly salary).

### C. Farahi's Requests for Living Expenses Are Reasonable and Supported by Competent Evidence.

Farahi requests that the Court approve the release of $5,500 per month for living expenses to support him and his wife. This amount includes: $3,000 per month for health insurance premium for John and Gissou Farahi; $900 per month for medication, co-pay and deductibles; $1000 per month for groceries; $500 per month for automotive expenses (gas, maintenance, insurance); and $100 per month for telephone and internet access. (Farahi Decl. ¶¶ 9-14.)

The requested expenses are reasonable and necessary. Almost $4,000 per month is for medical expenses, including health insurance premiums, medication, co-pays and deductibles. These expenses are necessities, not luxuries. Farahi also need money for food and groceries: $250 per week is a reasonable amount. Farahi will also require a car, and $500 per month for gas, insurance and maintenance is a reasonable estimate for automotive expenses. These requested amounts are reasonable and will require that he and his family significantly cut back the

expenses of their former lifestyle. Farahi does not seek funds to pay for multiple residences, multiple cars, travel, entertainment or dining out.

In addition to his personal living expenses, Farahi also requests $3,400 per month to maintain the value of his house. This includes $1,600 for utilities (gas, electricity and water); $1,200 for home insurance; $400 for the gardener; and $200 per month for pool service. (Farahi Decl. ¶¶ 15-21.) Farahi's home will be sold, and we have advised the receiver that any net proceeds from the sale will go to the investors. Meanwhile, Farahi's creditors, including the receiver, have an interest in Farahi maintaining his house for as long as he continues to reside there. This including paying for insurance, watering, landscaping, and maintaining the pool. If there is no money to keep up the house and yard, the property may decline in value.

Accordingly the Court should modify the TRO to permit Farahi to draw $5,500 per month against these specific untainted assets to pay for his reasonable living expenses and $3,400 per month to maintain the value of his house during the pendency of these proceedings.

**III.   THE COURT SHOULD RELEASE FUNDS FOR ATTORNEY'S FEES**

There is no dispute that the Court has the authority to release frozen funds for payment of attorney's fees. Indeed, on January 27, 2010, the Court entered an order per stipulation permitting counsel to draw against the monies on retainer for services performed through that date.

Since the entry of that order, counsel has expended significant resources to analyze the facts and the allegations of the SEC's complaint, advise the client, negotiate a bifurcated settlement with the SEC, and assist Farahi in connection with his ongoing cooperation with the receiver and in compliance with the Court's orders. Farahi requests that the Court modify the TRO to pay his attorney's fees and expenses.

Courts release funds for fees where the funds are drawn from untainted assets and the requested fees are reasonable. *FSLIC v. Ferm*, 909 F.2d 372, 375 (9th Cir.

1990); *Private Equity Management Group*, 2009 WL 2058247, at *2-3. Farahi's request meets those standards.

First, the funds for fees may be drawn from untainted assets from Farahi's personal income tax refund. Farahi received part of his federal tax refund on November 5, 2009, and on that same day, Farahi wired funds from his Sun West bank account into the client trust account of the Banafshe Law Firm. (Farahi Decl. ¶ 4.) Farahi transferred these funds from his personal tax refund to the Banafshe Law Firm so that he would have funds available to pay for his legal expenses to defend this action. The Banafshe Law Firm currently holds a balance of approximately $112,000 in its client trust account for Farahi. In addition, Bird Marella holds approximately $50,000 in its client trust account for Farahi. We have discussed this matter with the SEC and the SEC does not object to the Banafshe Law Firm transferring the remaining funds it holds to Bird Marella, and we request that the Court modify the TRO to permit such transfer.

Second, the request seeks the release of funds for fees and expenses actually billed and reasonably incurred. We request that the Court modify the TRO to permit Bird Marella to draw against monies held on retainer, including funds from the Banafshe Law Firm, for fees and expenses accrued from January 27, 2010 (the date of the prior order releasing assets for fees) to the date of entry of this proposed order, not to exceed $112,000. (From January 27, 2010 through March 5, 2010, Bird Marella's fees and expenses were $88,000.) We further request that the Court permit Bird Marella to draw against the retainer to pay Laffer & Gottlieb (forensic accountants retained by Bird Marella) fees and expenses not to exceed $5,000.

Farahi will require continuing representation in this action as the bifurcated settlement entered into by Farahi with the SEC does not fully resolve the matter. The settlement contemplates that there will be a separate remedy phase, including discovery and motion practice. Bird Marella requests that it be permitted to draw against monies held in its trust account for its fees and expense and report the timing

and amount of the draws to the SEC and the receiver, rather than apply to the Court to further modify the TRO to release fees.

## IV.   CONCLUSION

Farahi has sufficient personal assets to pay for his living expenses and attorney's fees. These assets are not part of the receivership and are separate from NewPoint investors' money. Farahi has shown good cause that he needs funds to pay his reasonable living expenses and attorney's fees. He has no other source of income. Accordingly, the Court should release funds from these assets for Farahi's reasonable expenses of $8,900 ($5,500 for living expenses and $3,400 to preserve the house), and to pay attorney's fees and expenses actually billed in an amount not to exceed $112,000 and accountant's fees and expenses not to exceed $5,000.

DATED: March 22, 2010

Gary S. Lincenberg
David I. Hurwitz
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.


By: /s/ David I. Hurwitz
                David I. Hurwitz
     Attorneys for Defendant John Farahi