JOHN B. BULGOZDY, Cal Bar. No. 219897
Email: bulgozdyj@sec.gov
FINOLA H. MANVELIAN, Cal. Bar No. 180681
Email: manvelianf@sec.gov
BERNARD B. SMYTH III, Cal. Bar No. 217741
Email: smythb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
John M. McCoy III, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT
JAN 18 2012
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NEWPOINT FINANCIAL SERVICES, INC.; JOHN FARAHI; GISSOU RASTEGAR FARAHI; and ELAHEH AMOUEI,<br><br>Defendants,<br><br>and<br><br>TRIPLE "J" PLUS, LLC; QUIFF INVESTMENTS, LTD.; JUSTIN P. FARAHI; and JOSHUA A. FARAHI,<br><br>Relief Defendants. | Case No. CV-10-0124 DDP (JEMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISION'S *EX PARTE* APPLICATION FILED UNDER SEAL**<br><br>**FILED UNDER SEAL** |

LODGED
CLERK, U.S. DISTRICT COURT
JAN 18 2012
CENTRAL DISTRICT OF CALIFORNIA
BY

JOHN B. BULGOZDY, Cal Bar. No. 219897
Email: bulgozdyj@sec.gov
FINOLA H. MANVELIAN, Cal. Bar No. 180681
Email: manvelianf@sec.gov
BERNARD B. SMYTH III, Cal. Bar No. 217741
Email: smythb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
John M. McCoy III, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED
CLERK, U.S. DISTRICT COURT
JAN 18 2012
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NEWPOINT FINANCIAL SERVICES, INC.; JOHN FARAHI; GISSOU RASTEGAR FARAHI; and ELAHEH AMOUEI,<br><br>Defendants,<br><br>and<br><br>TRIPLE "J" PLUS, LLC; QUIFF INVESTMENTS, LTD.; JUSTIN P. FARAHI; and JOSHUA A. FARAHI,<br><br>Relief Defendants. | Case No. CV-10-0124 DDP (JEMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISION'S *EX PARTE* APPLICATION FILED UNDER SEAL**<br><br>**FILED UNDER SEAL** |

## I. INTRODUCTION

With this *Ex Parte* Application, Plaintiff Securities and Exchange Commission ("Commission") seeks the reinstatement of the Court's order freezing all assets in Relief Defendant Quiff Investments, Ltd.'s ("Quiff") brokerage account maintained at Interactive Brokers, LLC (the "Quiff Interactive Account"). A temporary freeze of that account was ordered by the Court on March 17, 2010, based on evidence suggesting that the account was controlled by Defendant John Farahi and possibly contained defrauded investor funds. That asset freeze was lifted after Farahi represented to the Court in a sworn declaration and deposition that, among other things, he did not know about the source of the funds in the account, had no control over the account's funds, and did not obtain the money in the account from investors. However, evidence uncovered in the related criminal proceedings filed against Farahi in December 2011 established that Farahi's representations to the Court in this case were false and that the Quiff funds were properly frozen.

Specifically, admissions by Farahi and specific findings by the court in that related criminal proceeding confirm the falsity of Farahi's claims to this Court. Magistrate Judge Kenton found that "Mr. Farahi was intricately involved in the Quiff matter . . . and that he called the shots, if you will, regarding what happened to those funds. . . . [T]hey were only freed up when – largely based upon what apparently is false information provided by – primarily by Mr. Farahi to a federal court that he had no connection." Evidence was also presented that Farahi admitted that he referred investors to Quiff. Moreover, since the freeze over the account was lifted, funds have been used for Farahi's personal benefit, including to pay his legal fees.

Thus, contrary to what Farahi represented to this Court, it now appears that he did control the Quiff Interactive Account and that money in that account was obtained by investors solicited by Farahi. Therefore, the asset freeze over the account should be reinstated. Moreover, so that all funds appropriate to satisfy the ultimate disgorgement order in this case are preserved, the Commission also seeks (1) a freeze

1

of any assets disbursed from the Quiff account from the time the asset freeze over the account was lifted that are in the custody or control of Quiff, Farahi, and/or their officers, agents, servants, employees, attorneys, subsidiaries, members, relatives, and/or affiliates, and (2) an accounting by Farahi and Quiff of any disbursements made from the Quiff Interactive Account from the time that the asset freeze over the account was lifted.

The Commission requests, pursuant to Local Rules 7-19 and 7-19.2, that the Court consider its *Ex Parte* Application without prior notice to the defendants in order to prevent further dissipation of investor funds and other assets by the defendants before the Commission's Application is considered.

## II. STATEMENT OF FACTS

### A. Procedural Background

On January 8, 2010, the Commission filed its complaint against NewPoint Financial Services ("NewPoint"), Elaheh Amouei, and John and Gissou Farahi, alleging violations of the federal securities laws arising out of the unregistered and fraudulent offering and sale of more than $20 million worth of debentures to more than 100 investors. (Complaint, Docket No. 1). Because the defendants were engaged in ongoing fraudulent conduct and due to the risk of dissipation and further misappropriation of investor funds, the Commission also sought and obtained a temporary restraining order freezing the assets of NewPoint and the Farahis. (Temporary Restraining Order, Docket No. 11). On March 17, 2010, the Court entered a preliminary injunction continuing the freeze over the assets of NewPoint and the Farahis. (Preliminary Injunction Order, Docket No. 53). That asset freeze remains in place.

Shortly after obtaining the temporary restraining order freezing the assets of NewPoint and the Farahis, the Commission learned about the Quiff Interactive Account, a brokerage account held at Interactive Brokers, LLC ("Interactive Brokers") in the name of Quiff, a Relief Defendant in this case. The account,

which contained $11 million at the time, had been funded from a bank account domiciled in Cyprus. (*See, e.g.,* Plaintiff Securities and Exchange Commission's *Ex Parte* Application for Clarification of Court's January 8, 2010 Temporary Restraining Order Freezing Assets, Docket No. 18). Substantial circumstantial evidence indicated that the Quiff Interactive Account was controlled by John Farahi. (*Id.*). For example, the account was frequently accessed by computers associated with Farahi, trades made in the account parallel the trades made in the Interactive Brokers account in which Farahi traded NewPoint investor funds, and the only individual associated with the account, Farid Magbouleh, is a relative of Farahi. (*Id.*).

On March 17, 2010, based on the evidence linking the Quiff Interactive Account with Farahi, the Court entered a temporary restraining order freezing the assets in the Quiff Interactive Account.[1] (Temporary Restraining Order Freezing Assets, Docket No. 52). On March 25, 2010, the Court granted the Commission expedited discovery regarding the Quiff Interactive Account. (Orders: (1) Granting Expedited Discovery, (2) Prohibiting the Destruction of Documents, and (3) Requiring Accountings, Docket No. 79).

### B. Farahi's Misrepresentations Regarding The Quiff Interactive Account

In support of Quiff's efforts to remove the freeze of the Quiff Interactive Account, Farahi made numerous representations to the Court under oath. For instance, Farahi represented to the Court that (1) he had no knowledge of the source of the money in the Quiff Interactive Account (Deposition Transcript of John Farahi, dated March 29, 2010 ("Farahi Tr."), at 42:19-22, Declaration of Bernard B. Smyth ("Smyth Decl."), Ex. 1), (2) he never asked anyone to transfer money to a bank account in Cyprus (*id.* at 18:25-19:8), and (3) he never received any compensation

---

[1] That asset freeze was continued pursuant to Court's orders of March 29, 2010, April 2, 2010, and April 12, 2010. (Docket Nos. 89, 103, and 109).

3

...

1 from Quiff and did not expect to receive any compensation from Quiff (Supplemental Declaration of John Farahi, dated February 5, 2010 ("Supp. Farahi Decl."), ¶ 6, Smyth Decl., Ex. 2).

Based, in part, on these representations, the parties stipulated to the dissolution of the asset freeze. (Stipulation to Dissolution of March 17, 2010 Temporary Restraining Order Freezing Assets, Docket No. 122). Upon that stipulation, and also based on Farahi's representations to this Court regarding the Quiff Interactive Account, the Court dissolved the asset freeze over the Quiff Interactive Account on April 27, 2010. (Order, Docket No. 123).

### C. The Findings In The Criminal Case Against Farahi

On December 7, 2011, a criminal indictment was filed against Farahi charging him with 40 counts of violations of federal law, including mail fraud (18 U.S.C. § 1341), bank fraud (18 § U.S.C. 1014), witness tampering (18 U.S.C. § 1512(b)(1)), obstruction of justice (18 U.S.C. § 1512(c)(2)), and aggravated identity theft (18 U.S.C. § 1028A). (*See U.S. v. Farahi*, CR No. 11-1165-PSG (C.D. Cal.); *see also* Indictment, Smyth Decl., Ex. 3). In support of its request for detention of Farahi, the United States of America submitted evidence before Judge Kenton that Farahi was a flight risk in part because he had control over the substantial funds in the Quiff Interactive Account. (Government's Memorandum of Points and Authorities in Support of Government's Request for Detention of Defendant John Farahi, Smyth Decl., Ex. 4).

Magistrate Judge Kenton's findings and the evidence presented in the criminal case against Farahi establish that Farahi misled this Court to get access to the frozen Quiff funds. Specifically, the evidence presented at his detention hearing shows that Farahi actually solicited investors to transfer their money to a bank account in Cyprus which was used to fund the Quiff Interactive Account. (Memorandum of Interview, dated September 20, 2010, Smyth Decl., Ex. 5; Memorandum of Interview, dated January 10, 2011, Smyth Decl., Ex. 6). Farahi admitted that he "referred a few

individuals to Quiff." (Defendant John Farahi's Memorandum of Points and Authorities in Support of Application for Review of the Magistrate Judge's Order of Detention, dated December 12, 2011 ("Farahi's Motion Re Order of Detention"), at 10:7, Smyth Decl., Ex. 7). Moreover, Quiff began paying Farahi's legal fees less than 6 weeks after the freeze over the Quiff Interactive Account was dissolved. (June 2010 Wire Transfers, Smyth Decl., Ex. 8).

Based on the evidence presented at his detention hearing, Magistrate Judge Kenton found that:

> Mr. Farahi was intricately involved in the Quiff matter which occurred after the SEC investigation of NewPoint and that he called the shots, if you will, with regard to what happened to those funds. They went overseas to [Cyprus]. They came back to a brokerage account. And they were only freed up when – largely based upon what apparently is false information provided by – primarily by Mr. Farahi to a federal court that he had no connection.[2]

(Transcript of Defendant John Farahi's Detention Hearing, dated December 9, 2011 ("Detention Hearing Tr."), at 36:19-37:1, Smyth Decl., Ex. 9). Thus, the new evidence adduced at the criminal bail hearing established that Farahi misled this Court concerning his relationship to, and control over, Quiff and the Quiff Interactive Account.

### III. ARGUMENT

Given the misrepresentations Farahi made to this Court and the findings in the related criminal proceeding against him, the Court's previous order freezing the Quiff Interactive Account should be reinstated, and Quiff and Farahi should be ordered to provide an accounting for that account.

---

[2] Farahi appealed Magistrate Judge Kenton's order to Judge Gutierrez and was eventually released to home detention with electronic monitoring, a secured bond of $1.5 million, and conditions restricting his travel and contact with potential witnesses in the criminal proceedings. (Order Setting Bail, dated December 15, 2011, Smyth Decl., Ex. 10).

5

### A. Farahi Lied To This Court When The Freeze Order Was Lifted

Federal courts have inherent equitable authority to issue a variety of ancillary relief measures in Commission injunctive actions such as this one. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Included in these powers is the authority to freeze assets of both parties and nonparties. *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003); *SEC v. International Swiss Inv. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990). Here, the Court has already exercised that authority in ordering a freeze of the Quiff Interactive Account on March 17, 2010.

That freeze was dissolved upon stipulation of the parties only after Farahi made numerous sworn representations to the Court that he had no control over the Quiff Interactive Account, did not know whose money was in the account, and had received no benefit from Quiff and did not anticipate receiving any future benefit from Quiff. Facts that came to light in the course of the recently filed criminal action against Farahi show that those representations were false.[3]

First, the evidence and findings in the criminal proceedings show that – despite what he claimed to this Court – Farahi controls the Quiff Interactive Account. As Magistrate Judge Kenton found, Farahi "called the shots . . . with regard to what happened to [the Quiff Interactive Account] funds." (Detention Hearing Tr. at 36:21-22, Smyth Decl., Ex. 9).

Second, Farahi admitted that the Quiff Interactive Account contained defrauded investor funds (Farahi's Motion Re Order of Detention at 10:7, Smyth Decl., Ex. 7) – the exact opposite of what he told this Court. In fact, Farahi, along

---

[3] Through its *Ex Parte* Application, the Commission is currently seeking emergency relief to preserve any remaining funds appropriate for the satisfaction of the ultimate disgorgement order in this case. However, the information revealed in the criminal action against Farahi suggests that Farahi has been engaged in substantial fraud on the Court and violations of Court orders. The Commission is evaluating this evidence to determine whether to seek additional relief in the near future.

6

with his relative, Farid Magbouleh, solicited investors to transfer money to Quiff. Farahi and Magbouleh made the same misrepresentations to Quiff investors that Farahi made to solicit NewPoint investors. Quiff investors were told that their money would be invested in safe securities like certificates of deposits. (Memorandum of Interview, dated September 20, 2010, Smyth Decl., Ex. 5; Memorandum of Interview, dated January 10, 2011, Smyth Decl., Ex. 6). Instead, the money was used to trade in the same type of risky futures options trading that Farahi conducted with NewPoint investor funds. In short, the Quiff scheme appears to have been a continuation of the same securities fraud Farahi engaged in under the NewPoint name.

Third, Farahi's declaration that he did not anticipate receiving any compensation from Quiff was false. (Supp. Farahi Decl., ¶ 6, Smyth Decl., Ex. 2). Less than 6 weeks after the freeze of the Quiff Interactive Account was lifted, Quiff began paying Farahi's legal fees. (June 2010 Wire Transfers, Smyth Decl., Ex. 8).[4]

### B. The Asset Freeze Over The Quiff Interactive Account Should Be Reinstated

Given this new evidence of Farahi's continued use of the Quiff Interactive Account, the asset freeze previously removed should be reinstated. Courts use freeze orders to prevent waste and dissipation of assets and to ensure their availability for disgorgement for the benefit of victims of the fraud. *See e.g., Hickey*, 322 F.3d at 1132 (affirming imposition of asset freeze over nonparty

---

[4] At approximately the same time that the freeze of the Quiff Interactive Account was lifted, the Court granted, in part, Farahi's motion to modify the broader asset freeze over Farahi's assets to allow for the payment of living expenses and attorney fees. (Docket No. 121). That order was based, among other things, on representations made by Farahi and his counsel that Farahi had no other source of funds to cover his living expenses and legal fees and that Farahi had been cooperating with the Receiver to turn over assets. (*See, e.g.*, Docket Nos. 60 and 105).

7

brokerage firm controlled by the defendant to effectuate disgorgement order against defendant); *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1105-06 (2d Cir. 1972). Indeed, the Ninth Circuit specifically has found that "the public interest in preserving the illicit proceeds [of a defendant's fraud] for restitution is great." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999). Courts have similarly recognized that a disgorgement order will often be rendered meaningless unless an asset freeze is imposed prior to the entry of final judgment. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990); *SEC v. Musella*, 578 F. Supp. 425, 429 (S.D.N.Y. 1984). "[W]hen 'the public interest is involved in a proceeding of this nature, [the district court's] equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989), *citing FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982).

Because the evidence presented and findings made in the criminal proceedings show that Farahi continues to use and benefit from the Quiff Interactive Account, this Court should order an asset freeze over that account by reinstating its previous asset freeze order. In addition to the limitations set forth in the original asset freeze order, the freeze order should also apply to any funds disbursed from that account since the previous asset freeze was lifted on April 27, 2010 to the extent those funds are under the custody or control of Quiff, Farahi, and/or their officers, agents, servants, employees, attorneys, subsidiaries, members, relatives, and/or affiliates. Such funds were dissipated from the Quiff Interactive Account only after Farahi, through his false statements, induced the parties and the Court to agree to lift the asset freeze over the account. Quiff, Farahi, and/or their officers, agents, servants, employees, attorneys, subsidiaries, members, relatives, and/or affiliates should not benefit from Farahi's fraud on the Court. The *status quo* at the time of the original asset freeze over the Quiff Interactive Account should be preserved to the fullest extent possible.

### C. An Accounting and Production of Quiff Bank Statements Should Be Ordered

Quiff and Farahi should also be required to provide an accounting of any disbursements made from the Quiff Interactive Account from the time that the asset freeze over the account was lifted, including the production of bank statements for Quiff's bank account domiciled in Cyprus.

The Court's broad equitable powers in Commission enforcement actions include the ability to order ancillary relief, including requiring an accounting. *Wencke*, 622 F.2d at 1369 (9th Cir. 1980). Here, an accounting is necessary to establish the current location of funds removed from the Quiff Interactive Account after the asset freeze over the account was lifted. The best evidence of such information is likely to be the account statements and related documents from the bank account in Cyprus that was used to fund the Quiff Interactive Account. Therefore, as part of any accounting, Quiff and Farahi should be required to produce all bank statements and related information, including wire transfer confirmations, copies of checks, and all other deposit and withdrawal information from that Cypriot bank account. Moreover, any recipients of disbursements from the Quiff Interactive Account and/or any financial accounts held by Quiff should be required to provide an accounting of the disbursements received and the current location of assets received from Quiff.

///
///
///
///
///
///
///
///

9

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Commission's *Ex Parte* Application in the respects indicated herein.

Dated: January 18, 2012         Respectfully submitted,

/s/ Bernard B. Smyth
Bernard B. Smyth
Attorney for Plaintiff
Securities and Exchange Commission