1   Byron Z. Moldo (SBN 109652)
      bmoldo@ecjlaw.com
2   **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Ninth Floor
3   Beverly Hills, California 90212-2974
    Tel: (310) 273-6333
4   Fax: (310) 859-2325

5   Attorneys for James H. Donell, Permanent Receiver

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  SECURITIES AND EXCHANGE          CIVIL NO. CV 10-0124-DDP (JEMX)
    COMMISSION,
12                                   **MOTION TO: (1) APPROVE FINAL**
                     Plaintiff,      **ACCOUNT AND REPORT; (2)**
13                                   **APPROVE APPLICATION FOR**
          vs.                        **FINAL RECEIVER'S FEES AND**
14                                   **EXPENSES; (3) ESTABLISH**
    NEWPOINT FINANCIAL SERVICES,     **LIQUIDATING TRUST; AND (4)**
15  INC.; JOHN FARAHI; GISSOU        **DISCHARGE RECEIVER;**
    RASTEGAR FARAHI; and ELAHEH      **MEMORANDUM OF POINTS AND**
16  AMONE,                           **AUTHORITIES; DECLARATIONS**
                                     **OF JAMES H. DONELL, BYRON Z.**
17                   Defendants.     **MOLDO, SUSAN P. TOMLINSON**
                                     **AND HOWARD GROBSTEIN**
18  and
                                     Date:  December 12, 2016
19  TRIPLE "J" PLUS, LLC,            Time:  10:00 A.M.
                                     Ctrm:  9C
20                   Relief Defendant.
                                     Judge Dean D. Pregerson
21

22

23        James H. Donell, Permanent Receiver for NewPoint Financial Services, Inc.,

24  Triple "J" Plus, LLC and various related entities ("Receivership Entities") herewith

25  presents his motion to (1) approve final account and report; (2) approve application

26  for final receiver's fees and expenses; (3) establish liquidating trust; and (4)

27  discharge receiver ("Application").  The Application requests approval of the

28

1   Receiver's final account and report, and the fees and expenses incurred by the

2   Receiver and his professionals from January 10, 2010, the date of the Receiver's

3   appointment through the termination of the receivership estate, and payment thereof

4   including amounts previously approved by this Court, but held back pursuant to

5   orders of this Court.  Specifically, the Receiver requests that this Court approve the

6   fees and expenses of the Receiver, his counsel, Ervin Cohen & Jessup LLP ("ECJ"),

7   accountants Crowe Horwath LLP ("Crowe"), and accountants Grobstein Teeple

8   Financial Advisory Services, LLP (now known as Grobstein Teeple LLP)

9   ("Grobstein"), as follows:

10

11   (1) Receiver:  Total interim fees approved through 12/31/14:          $785,934.42

12                          Less:  fees paid:                                    ($688,604.09)

13                          Amount of hold back:                          $   97,330.33

14                          Fees 1/1/15 through termination:           $   30,805.45

15                          Total amount due – fees:                       $ 128,135.78

16

17                 Total interim expenses approved through 12/31/14: $   21,943.95

18                          Less:  expenses paid:                            ($  21,943.95)

19                          Expenses 1/1/15 through termination:      $    5,649.08

20                          Total amount due – expenses:                 $    5,649.08

21

22   In its order entered November 25, 2015, the Court approved fees and costs incurred

23   by the Receiver through December 31, 2014.  The work performed by the Receiver

24   from January 1, 2015 through the termination of the receivership estate is described

25   task-by-task on **Exhibit "B"**;

26   (2) ECJ:      Total interim fees approved through 12/31/14:        $2,492,196.45

27                          Less:  fees paid:                                  ($2,173,369.70)

28

ERVIN COHEN & JESSUP LLP

| | |
|---|---|
| Amount of hold back: | $ 318,826.75 |
| Fees 1/1/15 through termination: | $  61,225.25 |
| Total amount due – fees: | $ 380,052.00 |

| | |
|---|---|
| Total interim expenses approved through 12/31/14: | $ 137,454.95 |
| Less:  expenses paid: | ($ 137,454.95) |
| Expenses 1/1/15 through termination: | $  13,071.32 |
| Total amount due – expenses: | $  13,071.32 |

While preparing this Application the Receiver and ECJ discovered that ECJ was overpaid by the amount of $22,777.09.  The overpayment occurred following entry of the Court's May 16, 2011 order, a copy of which is attached hereto, marked **Exhibit "C,"** and incorporated herein by reference.  Specifically, interim fees of $253,079.00 to ECJ were approved.  This amount, however, did not reflect ECJ's agreement to discount its fees by ten 10%.   The correct amount of ECJ's approved interim fees is $227,771.10, and the Receiver was authorized to pay ECJ 90% of its approved fees, or $204,994.01.  Instead, and in accordance with the Court's May 16, 2011 order, the Receiver paid ECJ $227,771.10 which is $22,777.09 more than ECJ was entitled to receive.  In order to correct this overpayment the amount due to ECJ has been reduced by $22,777.09.

In its order entered November 25, 2015, the Court approved fees and costs incurred by ECJ through December 31, 2014.  The work performed by ECJ from January 1, 2015 through the termination of the receivership estate is described task-by-task on **Exhibit "D";**

/ / / /

/ / / /

/ / / /

13390.10:2746614.1

3

ERVIN COHEN & JESSUP LLP

1  (3)  Crowe:  Total interim fees approved through 12/31/14:    $1,017,179.10

2        Less:  fees paid:                                        ($  915,461.21)

3        Amount of hold back:                                     $  101,717.89

4        Fees 1/1/15 through termination:                         $    6,476.00

5        Reduction for billing charges:                           ($   2,796.00)

6        Courtesy discount                                        ($  80,859.10)

7        Total amount due – fees:                                 $   24,538.79

8

9        Total interim expenses approved through 12/31/14: $  10,766.77

10       Less:  expenses paid:                                    ($ 10,766.77)

11       Expenses 1/1/15 through termination:                     $       11.95

12       Total amount due – expenses:                             $       11.95

13

14  In its order entered November 25, 2015, the Court approved fees and costs incurred

15  by Crowe through December 31, 2014.  The work performed by Crowe from

16  January 1, 2015 through the termination of the receivership estate is described task-

17  by-task on **Exhibit "E."**  Crowe has agreed to a courtesy discount in the amount of

18  $80,859.10, and deducted all billing related charges throughout the entire case in the

19  amount of $2,796.00, both of which are reflected above.

20

21  (4)  Grobstein:  Total interim fees approved through 6/30/13:    $   18,050.00

22        Less:  fees paid:                                        ($  16,245.00)

23        Amount of hold back:                                     $    1,805.00

24        Fees 7/1/13 through termination:                         $   53,453.50

25        Less:  Courtesy discount                                 ($   1,805.00)

26        Reduction for billing charges:                           ($      75.00)

27        Total amount due – fees:                                 $   51,573.50

28

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

ERVIN COHEN & JESSUP LLP

| | | | |
|---|---|---|---|
| Total interim expenses approved through 6/30/13: | $ | | 171.83 |
| Less:  expenses paid: | ($ | | 171.83) |
| Expenses 7/1/13 through termination: | $ | | 53.47 |
| Total amount due – expenses | $ | | 53.47 |

In its order entered September 16, 2014, the Court approved fees and costs incurred through June 30, 2013.  The work performed by Grobstein from July 1, 2014 through the termination of the receivership estate is described task-by-task on **Exhibit "F"**.  Grobstein has voluntarily agreed to reduce its fees by $1,805.00.  In addition, Grobstein has deducted all billing related charges throughout the entire case in the amount of $75.00 which is reflected above.

Additionally, the Application requests approval to establish a liquidating trust into which the remaining assets of the receivership estate will be transferred.  Lastly, the Application requests that the Receiver be discharged.

The total amount of fees incurred by the Receiver and his professionals in the administration of this receivership estate is $4,465,320.17, which is 24.68% of the cash receipts through July 31, 2016.  Further, due to his recovery efforts the Receiver has been able to distribute 73.6% to investors with Court-approved claims. Under the circumstances the Receiver believes that the fees incurred by all professionals, while significant in number, were reasonable, necessary, provided substantial benefits to the receivership estate, and on that basis, should be approved by this Court, including payment of amounts previously approved but held back pending approval of the Receiver's final account and report.

## I.     INTRODUCTION

As this court is aware this equity receivership involved a complex unregistered fraudulent offering that targeted and victimized members of the Los

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  Angeles Iranian community. The Receivership Entities, all of which were controlled

2  by defendants John Farahi and Gissou Farahi ("Farahi"), offered and sold more than

3  $20 million worth of debentures to more than one hundred investors.  The funds

4  invested were commingled among 74 bank accounts controlled by Farahi,

5  and consisted of more than 44,000 transactions, which required a substantial

6  reconstruction, review and analysis of each bank account, together with loans, lines

7  of credit and investment accounts.  The Receiver was appointed on a temporary

8  basis on January 8, 2010, and the Receiver's appointment was made permanent on

9  February 17, 2010.

10       The appointment orders conferred broad duties, responsibilities, and powers

11  on the Receiver designed to allow him to secure, preserve, and protect the assets of

12  the Receivership Entities, investigate and recover sums transferred to third parties,

13  conduct a forensic accounting and analysis of the Receivership Entities' financial

14  transactions, review and analyze investor claims, and maximize the amount

15  ultimately available for distribution to investors.  The appointing order authorized

16  the Receiver to "engage and employ attorneys, accountants and other persons to

17  assist in such investigation and discovery."  The Receiver promptly determined that

18  experienced, qualified counsel was critical due to the complexity of the receivership

19  estate.  Accordingly, the Receiver engaged ECJ as his general counsel for the

20  receivership.  In addition, the Receiver retained the firm of Crowe, certified public

21  accountants, as his forensic accountants and to address all forensic, accounting, and

22  tax issues.  As of February 18, 2013, Howard Grobstein, the partner and the head of

23  forensic accounting at Crowe, left Crowe to form and begin operations at Grobstein.

24  With the exception of the professionals who provided tax-related services, all of the

25  members of Grobstein's team at Crowe who worked on this engagement also moved

26  to Grobstein on February 18, 2013.  On July 2, 2013, the Court entered its order

27  authorizing the Receiver to retain Grobstein as forensic accountants effective

28  13390.10:2746614.1

6

1    February 18, 2013.

2          During the final phase of the receivership the Receiver's work focused on

3    recovery of and collection of outstanding amounts owed to the receivership estate

4    where, in his business judgment, it was appropriate to do so, and would result in a

5    financial benefit to the receivership estate; distributing funds to investors, tax issues,

6    and concluding the receivership.  Other than these focused recovery efforts all

7    litigation has concluded.  The Receiver, in consultation with plaintiff Securities and

8    Exchange Commission ("SEC"), determined that it was appropriate to establish a

9    liquidating trust, transfer the few remaining assets of the receivership estate to the

10   trust, and for the Receiver, as Trustee, and without compensation, to administer

11   those assets pursuant to the terms of a liquidating trust agreement ("Trust"), a copy

12   of which is attached hereto as **Exhibit "G."**  A brief description of each of these

13   matters appears below.  In addition, the Receiver continued to communicate with

14   investors and creditors, and to otherwise administer the receivership estate in

15   accordance with the orders of this Court.

16         As of July 31, 2016, the Receiver distributed to investors 73.6% of their

17   Court-approved claims.  The Receiver was able to distribute funds primarily due to

18   the success of litigation he commenced, plus the recovery of additional funds from

19   other various sources.  The only remaining unliquidated assets that existed in the

20   receivership estate as of July 31, 2016 consisted of $19,002.32 due pursuant to

21   settlement agreements, and $13,431.12 due pursuant to outstanding judgments, not

22   including accrued interest. Attached hereto, marked **Exhibit "H,"** and incorporated

23   herein by reference is a schedule showing the amounts due as of July 31, 2016.  In

24   order to protect the privacy rights of individuals all names have been deleted.

25         The Receiver believes that is appropriate to terminate the receivership estate,

26   and to transfer the remaining assets to a liquidating trust to be overseen and

27   administered by the Receiver as Trustee.  The Receiver has made every effort to

28   13390.10:2746614.1                               7

ERVIN COHEN & JESSUP LLP

1   administer and liquidate the remaining assets as efficiently and quickly as possible.
2   In addition, the Receiver has filed all required federal and state tax returns, prepared
3   and posted monthly financial statements on his website, and responded to inquiries
4   from investors and creditors.

6   **II.   SUMMARY OF ADMINISTRATION**

7   1.   On January 8, 2010, this Court appointed James H. Donell
8   ("Receiver"), as Temporary Receiver for defendant Newpoint Financial Services,
9   Inc. ("Newpoint") and relief defendant Triple J.

10   2.   On February 17, 2010, this Court entered its order (the "Order") which
11   confirmed the Receiver's appointment as the Permanent Receiver for Newpoint
12   Financial Services, Inc. ("NewPoint"), Triple J, and their subsidiaries and affiliates,
13   including, but not limited to, Newpoint Investments, Inc., Newpoint Accounting and
14   Tax Services Co., NPS 1031 Exchange of California, NPS 1031 Exchange
15   Corporation of California, Newpoint Securities, LLC, Newpoint Mortgage Bankers,
16   Inc. and Newpoint Real Estate Services (hereinafter jointly the "Receivership
17   Entities").

18   3.   On May 10, 2010, this Court entered its Order Approving Stipulation to
19   Include Additional Assets in Receivership Estate.  The Court's May 10, 2010, order
20   also appointed the Receiver over Sea Runner, LLC ("Sea Runner") and a Ferrari 612
21   automobile, and directed the Receiver to administer Sea Runner and the Ferrari
22   automobile in accordance with this Order.

23   4.   On or about August 20, 2010, the Court entered its "Order Approving
24   Stipulation to Include Parsi Investments LLC as an Additional Receivership Entity"
25   ("Parsi Order").  The Parsi Order appointed the Receiver over Parsi Investments,
26   LLC ("Parsi").  The Parsi Order further dictated that the Receiver administer Parsi
27   in accordance with the terms of the Order.

28   13390.10:2746614.1

8

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

5.      Pursuant to the Order and law governing federal equity receivers, the Receiver was charged with, among other things, assuming control of the Receivership Entities and their assets; performing an accounting of the assets and financial condition of the Receivership Entities; investigating, locating, and recovering assets; preparing reports for the Court; and preparing an appropriate claims procedure and investor/creditor distribution plan.

6.      On April 13, 2011, the Receiver filed his first interim report which described the activity of the receivership estate through December 31, 2010.  On May 16, 2011, the Court entered its order approving the Receiver's interim report.

7.      On November 7, 2012, the Receiver filed his second interim report which described the activity of the receivership estate through December 31, 2011. On December 10, 2012, the Court entered its order approving the Receiver's interim report.

8.      On October 17, 2013, the Receiver filed his third interim report which described the activity of the receivership estate through December 31, 2012.  On November 25, 2013, the Court entered its order approving the Receiver's interim report.

9.      On July 18, 2014, the Receiver filed his fourth interim report which described the activity of the receivership estate through June 30, 2013.  On September 16, 2014, the Court entered its order approving the Receiver's interim report.

10.     On October 9, 2015, the Receiver filed his fifth interim report which described the activity of the receivership estate through December 31, 2014.  On November 25, 2015, the Court entered its order approving the Receiver's interim report.

11.     This interim report and application for compensation summarizes the activity of the receivership estate during the period of January 1, 2015 through

13390.10:2746614.1

9

1   the termination of the receivership estate, and requests payment for services

2   rendered during this final phase of the case, as well as approval of all interim awards

3   of fees and costs.

4

5   **III.   SUMMARY OF RECEIVER'S ACTIVITIES.**

6       12.   As indicated above during the period of time covered by this report and

7   fee application the activities of the Receiver, ECJ, Grobstein, and Crowe primarily

8   related to the following areas:

9           a.  Collection of outstanding amounts owed to the receivership estate;

10          b.  Preparation of liquidating trust;

11          c.  Distribution of funds to court-approved claimants;

12          d.  Tax issues; and

13          e.  Concluding the receivership.

14  A brief description of the services performed by the Receiver, ECJ, Grobstein, and

15  Crowe concerning each of these areas appears below.

16      13.   <u>Collection of outstanding amounts owed to the receivership estate</u> – As

17  of January 1, 2015, there were several outstanding and unsatisfied judgments that

18  the Receiver obtained, as well as amounts owed pursuant to settlement agreements

19  executed by "Winners."  The Receiver concentrated his efforts and only pursued

20  collection where, in his business judgment, it was likely to result in a financial

21  benefit to the receivership estate.  Between January 1, 2015, and July 31, 2016,

22  $166,793.79 was collected by the Receiver that related to judgments and settlement

23  agreements.

24      14.   <u>Liquidating trust</u> – As stated above, the Receiver, in consultation with

25  plaintiff SEC, determined that the establishment of a liquidating trust, into which the

26  remaining assets of the receivership estate would be transferred, was appropriate.

27  Specifically, and based on his experience in another SEC receivership, the Receiver

28  13390.10:2746614.1                                     10

ERVIN COHEN & JESSUP LLP

concluded that he could administer the remaining assets of the receivership estate more efficiently and economically pursuant to the terms of the Trust. The Receiver requested that ECJ prepare the proposed Trust, a copy of which is attached hereto as **Exhibit "G."**   As part of this final account and report the Receiver requests that the Court approve the establishment of the Trust, and authorize and instruct the Receiver, after payment of final compensation, to transfer the remaining assets, including the remaining cash balance, of the receivership estate to the Trust, to be administered by the Receiver who proposes to serve as Trustee without compensation, pursuant to the terms of the Trust.

15.   <u>Distribution of funds to Court-approved claimants</u> – As of July 31, 2016, the Receiver made seven (7) distributions totaling $10,168,909.53 to Court-approved claimants, which represented 73.6% of the Court-approved investor claims.

16.   <u>Tax issues</u> – The Receiver has filed all required federal and state tax returns for the Receivership Entities through December 31, 2015. The Court previously granted the Receiver's motion to consolidate the Receivership Entities, effective January 1, 2013. Due to the approval of the consolidation motion the Receiver was able to prepare and file a consolidated tax return for the receivership estate rather than individual tax returns for each entity.

17.   <u>Concluding the receivership</u> – During this final phase the Receiver has primarily focused his efforts on concluding the receivership by only pursuing matters he believed would result in the recovery of funds, arranging for the preparation of necessary tax returns, and establishing the Trust.

18.   As of July 31, 2016, the Receiver had filed 51 lawsuits against Winners only after negotiations were unsuccessful. As of July 31, 2016, a total of $1,475,045.40 had been paid to the Receiver from Winners. This amount does not including the remaining principal balances due pursuant to settlement agreements

1  and outstanding judgments totaling $32,433.44 as of July 31, 2016 that the

2  Receivership Estate is also entitled to collect, which the Receiver proposes to

3  transfer to the Trust.

4

5  **III.  FINANCIAL INFORMATION.**

6       19.    As of July 31, 2016 the sum of $792,596.19 existed in the receivership

7  estate.  A copy of the Receiver's financial report which reflects all financial activity

8  through July 31, 2016 is attached hereto, marked **Exhibit "A,"** and incorporated

9  herein by reference.

10       20.    As stated above, as of July 31, 2016, the Receiver made seven (7)

11  distributions to investor claimants in the total amount of $10,168,909.53 which

12  represented 73.6% of the Court-approved investor claims.

13

14  **IV. RECOMMENDED FURTHER ACTIVITIES.**

15       21.    Due to the current stage of the receivership the Receiver recommends

16  that the Court approve the Receiver's final account and report, terminate the

17  receivership estate, and instruct the Receiver to transfer all remaining receivership

18  estate assets to the Trust.

19

20  **V. FINAL FEE APPLICATION.**

21       22.    The Receiver's efforts have focused on the recovery of assets and funds

22  for the receivership estate and the claimants. The recovery efforts have required a

23  tremendous amount of work by the Receiver, his attorneys, and forensic

24  accountants, and following the successful conclusion of the major litigation matters

25  identified above, have steadily decreased over time.

26       23.    The Receiver believes that he has made substantial process during this

27

28

13390.10:2746614.1

12

ERVIN COHEN & JESSUP LLP

1    phase of the receivership estate.  As such, all of the work performed by the Receiver

2    and his retained professionals between January 1, 2015 and the termination of the

3    receivership estate was necessary, reasonable and benefited the receivership estate.

4           24.    Based on an agreement with the SEC to discount his billing rate, the

5    Receiver incurred fees of $30,805.45 and costs of $5,649.08 during the period

6    January 1, 2015 through the termination of the receivership estate.  As shown above,

7    through December 31, 2014, the Court previously approved fees in the amount of

8    $785,934.42, costs in the amount of $21,943.95, and the amount of $97,330.33

9    which was approved by the Court has been held back pending further Court order.

10   At this time the Receiver is requesting the Court to approve his total fees in the

11   amount of $816,739.87, costs in the amount of $27,593.03, and payment of the sum

12   of $128,135.78 in fees which includes the amounts previously approved but held

13   back, and $5,649.08 in costs.  True and correct copies of the Receiver's billing

14   statements for the final period are attached hereto, marked **Exhibit "B,"** and

15   incorporated herein by reference.  The billing statements include an analysis of fees

16   incurred by category, as well as a monthly breakdown of fees and costs.  In addition,

17   the billing statements contain a schedule of the professionals who rendered services

18   and their respective billing rates.  The work performed on **Exhibit "B"** is broken

19   down into the following categories:

| | |
|---|---|
| Administration:  General estate operations | $ 3,930.30 |
| Administration:  Investor relations | $ 2,468.70 |
| Administration:  Receivership Estate operations | $11,043.10 |
| Administration:  Website | $   402.75 |
| Financial:  Accounting/Auditing | $ 4,110.00 |
| Financial:  Status reports | $   103.95 |
| Financial:  Tax issues | $   895.95 |
| Legal:  Case administration | $   188.10 |
| Legal:  Claims administration and objections | $   198.00 |
| Litigation:  Asset recovery | $ 4,638.15 |
| Litigation:  Winners | $ 2,856.13 |
| SUB-TOTAL | $30,835.15 |

13390.10:2746614.1                                    13

ERVIN COHEN & JESSUP LLP

| | |
|---|---|
| LESS WRITE DOWNS | (      29.70) |
| TOTAL FEES DUE | $30,805.45 |

25.     Based on its standard billing rates, ECJ incurred fees of $61,225.25 and costs of $13,071.32 during the period January 1, 2015 through the termination of the receivership estate.  The amount of the fees incurred by ECJ reflects the following voluntary adjustments:

        a.     Reduction of fees incurred in the Babakhan litigation matter from $8,298.50 to $4,000.00;

        b.     Reduction of fees incurred in the Moradzadeh litigation matter from $12,283.50 to $4,500.00;

        c.     Reduction of fees by $1,525.00 due to billing errors; and

        d.     Pursuant to a prior agreement with the SEC, ECJ agreed to discount its billing rates by 10%, resulting in a reduction of $6,009.50.

The amount of the total fee reduction during the final period of the receivership estate is $19,216.50.  ECJ has not charged any amounts for preparation of fee applications.  As shown above, through December 31, 2014, the Court previously approved fees in the amount of $2,492,196.45, costs in the amount of $137,454.95, and the amount of $318,826.75 which was approved by the Court has been held back pending further Court order.  At this time, the Receiver is requesting approval of ECJ's total fees in the amount of $2,553,421.70, costs in the amount of $150,526.27, and payment of the sum of $380,052.00 in fees which includes the amounts previously approved but held back, and $13,071.32 in costs.  True and correct copies of ECJ's billing statements for the final period are attached hereto, marked **Exhibit "D,"** and incorporated herein by reference.  The billing statements include an analysis of fees incurred by category, as well as a monthly breakdown of fees and costs.  In addition, the billing statements contain a schedule of the professionals who rendered services and their respective billing rates.  The work

ERVIN COHEN & JESSUP LLP

performed on **Exhibit "D"** is broken down into the following categories:

| | |
|---|---|
| Case administration | $  1,452.00 |
| Asset analysis and recovery | $18,679.00 |
| Asset disposition | $14,246.25 |
| Employment applications/professionals | $     686.00 |
| Other contested matters | $  3,212.00 |
| Tax issues: | $  1,250.00 |
| Claims administration and objections | $     650.00 |
| Litigation:  David Kahazan | $     237.50 |
| Litigation:  Rebecca and Behnam Enayati | $     285.00 |
| Litigation:  Khosrow Geoola | $  1,435.00 |
| Litigation:  Majid Mandi Ghomi | $     530.00 |
| Litigation:  Reza Babakhan | $  4,000.00 |
| Litigation:  Mehrdad Moradzadeh | $  4,500.00 |
| Litigation:  Nixon Peabody | $     600.00 |
| Litigation:  Payum Banafshe | $     250.00 |
| Litigation:  Mostafa Karinbeik | $       95.00 |
| Litigation:  Pedram Youabian | $     617.50 |
| Estimate to close receivership estate | $ 8,500.00 |
| TOTAL FEES | $62,225.25 |

These amounts reflect the voluntary adjustments described above.

26.   Crowe incurred fees of $6,476.00 and costs of $11.95 after December 31, 2014.  As shown above, through December 31, 2014, the Court previously approved fees in the amount of $1,017,179.10, costs in the amount of $10,766.77, and the amount of $101,717.89 which was approved by the Court has been held back pending further Court order.  At this time, the Receiver is requesting approval of Crowe's total fees in the amount of $940,000.00, and costs in the amount of $10,778.72.  After deducting a courtesy discount of $80,059.10 and all billing related charges in the amount of $2,796.00, Crowe is requesting payment of the sum of $24,538.79 in fees, and $11.95 in costs.  True and correct copies of Crowe's billing statements for the final period are attached hereto, marked **Exhibit "E,"** and

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    incorporated herein by reference. All of the time spent by Crowe related to tax

2    return preparation and tax issues affecting the receivership estate.  No portion of the

3    time spent by Crowe related to litigation consulting.

4         27.    Grobstein incurred fees of $53,453.50 and costs of $53.47 between July

5    1, 2013 and the termination of the receivership estate.  As shown above, through

6    June 30, 2013, the Court previously approved fees in the amount of $18,050.00,

7    costs in the amount of $171.83, and the amount of $1,805.00 which was approved

8    by the Court has been held back pending further Court order.  The Receiver is

9    requesting approval of Grobstein's total fees in the amount of $71,503.50, costs in

10   the amount of $225.30, and payment of fees in the sum of $51,573.50, after

11   deducting all billing related charges in the amount of $75.00, and costs in the sum

12   $53.47.  In addition, Grobstein has agreed to waive the amount of $1,805.00

13   previously approved but held back.  True and correct copies of Grobstein's billing

14   statements for services rendered between July 1, 2013 and the termination of the

15   receivership estate are attached hereto, marked **Exhibit "F,"** and

16   incorporated herein by reference. Most of the time spent by Grobstein related to

17   litigation consulting.  None of the time spent by Grobstein related to tax return

18   preparation or tax issues affecting the receivership estate.

19        28.    To summarize, the Receiver seeks approval of final fees, including

20   ratification of all prior interim Court orders approving payment of fees and costs, to

21   the Receiver, ECJ, Crowe, and Grobstein, in the following amounts:

22        a.  Receiver:  Fees:              $  816,739.87

23                       Costs             $   27,593.03

24        b.  ECJ:       Fees              $2,553,421.70

25                       Costs             $  150,526.27

26        c.  Crowe:     Fees              $  940,000.00

27                       Costs             $   10,778.72

13390.10:2746614.1                    16

1          d. Grobstein: Fees              $   71,503.50

2                    Costs              $      225.30

3    In addition, the Receiver seeks authority to pay fees and costs, to the Receiver, ECJ,

4    Crowe, and Grobstein, in the following amounts:

5          a. Receiver: Fees:            $128,135.78

6                    Costs              $    5,649.08

7          b. ECJ:        Fees             $380,052.00

8                    Costs              $  13,071.32

9          c. Crowe:      Fees             $  24,538.79

10                   Costs              $       11.95

11         d. Grobstein: Fees            $  51,573.50

12                   Costs              $       53.47

13

14   **VI. ABANDONMENT OF ASSETS.**

15         29.     Shortly after his appointment the Receiver became aware of certain

16   assets owned by the Receivership Entities consisting of partnership interests in

17   Cardinal Drilling Partners and Viking Drilling Partners (collectively

18   "Cardinal/Viking"). From his review of the books and records of the Receivership

19   Entities the Receiver discovered that over $500,000.00 was paid to acquire the

20   interests in Cardinal/Viking. During the receivership estate the Receiver has been

21   sent periodic reports regarding the financial activity of Cardinal/Viking. The

22   Receiver, however, has not received any distributions from Cardinal/Viking. The

23   last tax return information sent to the Receiver for Cardinal/Viking related to 2014.

24   As of December 31, 2015, the partnership interests controlled by the Receiver in

25   Cardinal/Viking possessed negative value. The Receiver believes that

26   Cardinal/Viking may no longer be viable operating entities. Due to the current stage

27   of the receivership, the Receiver proposes to abandon the interests in

28   13390.10:2746614.1                          17

ERVIN COHEN & JESSUP LLP

1  Cardinal/Viking that he currently controls.

2

3  **VII. <u>CONCLUSION.</u>**

4      30.    The Receiver requests that this Court enter its order as follows:

5          a.  Approving, settling and allowing the Receiver's final account and

6  report herewith as presented;

7          b.  Terminating the receivership and discharging the Receiver from all

8  further duties, liabilities and responsibilities;

9          c.  Approving the Receiver's total fees in the amount of $816,739.87,

10  and total costs in the amount of $27,593.03 on a final basis;

11          d.  Approving ECJ's total fees in the amount of $2,553,421.70, and

12  total costs in the amount of $150,526.27 on a final basis;

13          e.  Approving Crowe's total fees in the amount of $940,000.00, and

14  total costs in the amount of $10,778.72 on a final basis;

15          f.  Approving Grobstein's total fees in the amount of $71,503.50, and

16  total costs in the amount of $225.30 on a final basis;

17          g.  Ratifying all interim orders approving payment of fees and costs to

18  the Receiver, ECJ, Crowe, and Grobstein;

19          h.  Authorizing the Receiver to pay the Receiver the amount of

20  $128,135.78 fees which includes $97,330.33 previously approved but held

21  back, and $5,649.08 costs;

22          i.  Authorizing the Receiver to pay ECJ the amount of $380,052.00 fees

23  which includes $318,826.75 previously approved but held back, and

24  $13,071.32 costs;

25          j.  Authorizing the Receiver to pay Crowe the amount of $24,538.79

26  fees, and $11.95 costs;

27          k.  Authorizing the Receiver to pay Grobstein the amount of

28

ERVIN COHEN & JESSUP LLP

$51,573.50 fees, and $53.47 costs;

l.  Approving the establishment of the Trust on the terms set forth in Exhibit "G";

m.  Authorizing and instructing the Receiver, after paying the final amounts due to the Receiver, ECJ, Crowe, and Grobstein, to deliver the remaining funds in his possession and the outstanding judgments and settlement agreements to the Trust;

n.  Ordering that the Receiver and the Receivership Estate be held free and harmless from any and all claims that may arise in the future that relate to the Receiver and/or the Receivership Estate;

o.  Ratifying, confirming and approving all of the Receiver's acts, transactions and all of his actions, including the actions of his employees, attorneys and agents, as Receiver herein for the Receivership period as being right and property and in the best interests of the Receivership Estate and the parties to this action;

p.  Ratifying, confirming and approving all distributions for compensation and costs to the Receiver, his attorneys and accountants made during the Receivership Estate;

q.  Releasing the Receiver, his attorneys, accountants, agents and/or employees and those acting on behalf of the Receivership Estate from all liability for any and all claims, demands or causes of action that may have directly or indirectly arisen from the administration of the Receivership Estate prior to, during or after the Receivership period, that were not brought before the Court before the time of hearing on the Receiver's final account and report;

r.  Directing the Receiver to maintain all books and records of the Receivership Estate for six (6) months from the date of entry of this Court's

19

order approving the Receiver's final account and report, except as otherwise ordered by the Court;

s. Authorizing the Receiver to abandon and/or destroy all books and records of the Receivership Estate under his control no earlier than six (6) months after the date of entry of this Court's order approving the Receiver's final account and report, other than those books and records that are required for the administration of the Trust; and

t. For such further and other relief as the Court may deem just and proper.

DATED: October 31, 2016                    ERVIN COHEN & JESSUP LLP


By: /s/ Byron Z. Moldo
      BYRON Z. MOLDO
Attorneys for James H. Donell,
Permanent Receiver

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**THE RECEIVER AND HIS RETAINED PROFESSIONALS ARE ENTITLED TO PAYMENT OF THEIR FEES AND EXPENSES OUT OF THE FUNDS IN THE RECEIVERSHIP ESTATE.**

When a receiver himself collects the funds held in the receivership estate, he is entitled to payment of all of his administrative expenses, including receiver's fees, attorneys' fees and accountants' fees. FTC v. Crittenden, 823 F. Supp. 699, 704 (C.D. Cal. 1993). In addition, the Court has broad equitable supervisory powers to institute reasonable procedures for the orderly and efficient administration of the receivership for the benefit of creditors. See CFTC v. Topworth Int'l. Ltd., 205 F.3d 1107, 1115 (9th Cir. 1999), citing SEC v. Hardy, 803 F.2d 1034, 1037-38 (9th Cir. 1986). As such, the Court has the authority to order payment to the Receiver and his retained professionals for their work on behalf of the receivership estate.

Payment of the Receiver's attorneys' fees is governed by the Common Fund Doctrine. The purpose of the Common Fund Doctrine is to compensate litigants and their lawyers, who create, preserve, increase, reapportion, or compel the distribution of a common fund, which may redound to the benefit of others. 1 Derfner, Wolf, Court Awarded Attorney Fees (Matthew Bender 2001) § 2.01, p. 2-3. In receivership cases, the Receiver is considered to be an impartial stakeholder with total control over the property or assets which are the subject of litigation. Id. at § 2.03 [4], p. 2-31, citing Crump v. Ramish, 86 F.2d 362 (9th Cir. 1936). In such cases, therefore, the Receiver is entitled to payment of his attorneys' fees and expenses, as well as other administrative fees and expenses, out of funds held in the receivership estate. See FTC v Crittenden, supra, 823 F. Supp. at 704. In addition, in this case the Court's preliminary injunction specifically provides that the "defendants, and their subsidiaries and affiliates, shall pay the costs, fees and

21

1  expenses of the permanent receiver incurred in connection with the performance of

2  his or her duties described in this Order, including the costs and expenses of those

3  persons who may be engaged or employed by the permanent receiver to assist him

4  or her in carrying out his or her duties and obligations." (Order, ¶ VI.)

5

6  ## II.

7  ## THE RECEIVER'S FEES AND EXPENSES, AS WELL AS

8  ## THOSE OF HIS ATTORNEYS AND ACCOUNTANTS, ARE

9  ## REASONABLE AND NECESSARY.

10       In the past, the method of computation of fee awards in common fund cases

11  was to calculate the fees as a percentage of the monies contained in the fund.  See 1

12  Derfner, Wolf, supra, § 2.06, p. 2-82.  This method has since given way to the

13  "lodestar" calculation relying upon the time an attorney has actually expended on

14  the lawsuit, rather than granting the attorney a percentage of the fund.  Id.  Still

15  other Courts of Appeal, including the 9th Circuit, agree that fees can be calculated

16  based upon a percentage of the recovery in common fund cases.  Six Mexican

17  Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990).  Generally,

18  however, while the percentage of the fund method may be used in common fund

19  cases, the decision as to which method to use is within the discretion of the District

20  Court, and no abuse of that discretion will be found so long as the resulting fee is

21  reasonable.  Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000).  Nevada has,

22  therefore, adopted the majority position that either methodology may be employed

23  to award attorneys' fees in common fund cases.  Id.

24       In this case, in the Receiver's opinion, the administrative fees and expenses of

25  the Receiver, including attorneys' and accountants' fees, are reasonable.  The total

26  amount of fees incurred by the Receiver and his professionals in the administration

27  of this receivership estate is $4,465,320.17, which is 24.92% of the cash receipts

28

13390.10:2746614.1

22

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

ERVIN COHEN & JESSUP LLP

1   through July 31, 2016.  Further, due to his recovery efforts the Receiver has

2   distributed to investors 73.6% of their Court-approved claims.  While the

3   compensation of the Receiver and all professionals has been determined on an

4   hourly basis, if the Court were to consider the percentage of fund method, the fees

5   are reasonable.  In this case that required exhaustive review of voluminous financial

6   records, commencement and prosecution of complex litigation, the Receiver has

7   been able to recover substantial funds, and make seven (7) interim distributions to

8   investors with Court-approved claims. Under the circumstances the Receiver

9   believes that the fees incurred by all professionals, while significant in number, were

10  reasonable, necessary, provided substantial benefits to the receivership estate, and

11  on that basis, should be approved by this Court, including payment of amounts

12  previously approved but held back pending approval of the Receiver's final account

13  and report.  Another factor to consider is that the hourly rates of the Receiver and all

14  professionals have not increased since the commencement of the receivership estate.

15          Factors appropriate for consideration of the reasonableness of a fee award in a

16  common fund case are: (1) the number of beneficiaries; (2) the presence or absence

17  of objectors to the creation of the fund or the fees to be awarded; (3) the skill and

18  efficiency of the attorneys; (4) the complexity and duration of the litigation; (5) the

19  risk of non-payment; (6) the amount of time devoted to the case by counsel; and (7)

20  awards in similar cases.  See In re Cendant Corp. Prides Litigation, 243 F.3d 722,

21  733 (3d. Cir: 2001).

22          Here, nearly all of the foregoing factors support the reasonableness of the fee

23  award sought by the Receiver's application.  There are more than 100 potential

24  beneficiaries of the receivership estate; the Receiver, his staff and his retained

25  professionals have demonstrated transactional, litigation, and forensic skills and as

26  much efficiency as possible; the transactions in which Farahi engaged were

27  complex, and required significant amounts of research and analysis; no other source

28

ERVIN COHEN & JESSUP LLP

1  of payment for the Receiver's administrative expenses can be identified; and the

2  Receiver, his staff, attorneys and accountants have expended hundreds of hours of

3  services on behalf of the receivership estate during the entire receivership.  Further,

4  the Receiver believes that the results achieved in this case have been extraordinary

5  as Court-approved investor claimants have received 73.6% of their allowed claims.

6  And, as set forth above, if the percentage of fund method of compensation is used,

7  the Receiver submits that 24.92% for all professional fees is fair and reasonable.  An

8  additional factor to consider is that the hourly rates of the Receiver and his

9  professionals are, in the Receiver's professional opinion, less than rates charged by

10  other professionals performing similar services in receivership matters.

11      Under either the percentage of recovery or lodestar methods of calculation of

12  the fee award herein, the Receiver's fees and those of his retained professionals are

13  reasonable and necessary, and should be paid out of the receivership estate.

14  Furthermore, the Receiver and his retained professionals have reduced their normal

15  billing rates; have not increased their billing rates throughout the case; have

16  attempted to include all related services under single billing entries to clearly

17  describe all charges; have reduced the number of timekeepers assigned to tasks; and

18  have limited copying costs to 10¢ per page.  During this final period the majority of

19  the time spent by the Receiver and the professionals employed by him have related

20  to collection of outstanding amounts owed to the receivership estate, preparing the

21  proposed Trust, distributing funds to court-approved claimants, tax issues,

22  and concluding the receivership.

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  / / / /

28  13390.10:2746614.1

24

ERVIN COHEN & JESSUP LLP

# III.

# CONCLUSION.

The Receiver believes that the receivership established in this case should be terminated.  Further, the Receiver believes that the establishment of the Trust, and transferring the remaining assets of the receivership estate to the Trust, is an efficient and cost-effective manner in which to administer the remaining assets. Therefore, the Receiver recommends that this Court approve this final account and report, and grant the relief requested.

DATED:  October 31, 2016          Respectfully submitted,

                                        ERVIN COHEN & JESSUP LLP


By:  /s/ BYRON Z. MOLDO
                BYRON Z. MOLDO
                Attorneys for James H. Donell, Permanent Receiver

*ERVIN COHEN & JESSUP LLP*

13390.10:2746614.1

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

## DECLARATION OF JAMES H. DONELL

I, JAMES H. DONELL, declare as follows:

1.     I am duly appointed, qualified and acting Permanent Receiver herein. The facts stated herein are known to me from my personal knowledge or are based upon the books and records regularly used and maintained in my business.  If called upon to do so, I could and would competently testify as to all facts contained herein.

2.     To the best of my knowledge, information and belief, formed after reasonable inquiry, the Motion to: (1) Approve Final Account and Report; (2) Approve Application for Final Receiver's Fees and Expenses; (3) Establish Liquidating Trust; and (4) Discharge Receiver (the "Application"), and all fees and expenses requested therein, are true and accurate, and comply with the SEC Billing Instructions.

3.     All fees contained in the Application are based upon hourly rates listed in Applicant's fee schedule, and fees requested are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

4.     The Application does not include reimbursement for the amortization of any cost of any investment, equipment, or capital outlay.

5.     The amounts requested in the Application for reimbursement of expenses are for services which were necessary and justifiably purchased or contracted for with a third party.  To the extent the reimbursement of expenses includes items that were done in house, only the actual cost is included in the request for reimbursement, and no profit is made thereon.

6.     I have reviewed, in detail, all of the billing statements of me, Ervin Cohen & Jessup LLP ("ECJ"), Crowe Horwath LLP ("Crowe"), and Grobstein Teeple LLP ("Grobstein"), for the entire receivership.  I believe that all of the services provided by ECJ, Crowe, and Grobstein were reasonable, necessary, and provided a benefit to the receivership estate.  Further, based on my professional

13390.10:2746614.1

26

experience I believe that the hourly billing rates charged by ECJ, Crowe, and Grobstein are less than rates charged by other firms for similar services. Also, the hourly rates of me and all professionals have not increased since the commencement of the receivership estate. In addition, and in large part, due to the efforts of the professionals in this matter, I have been able to make seven (7) distributions totaling $10,168,909.53 to Court-approved claimants, which represents 73.6% of the Court-approved investor claims. Under the difficult circumstances of this case, and in particular, the number of transactions that were analyzed, I believe that these results are significant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed this 31st day of October, 2016, at Los Angeles, California.

_JAMES H. DONELL_

JAMES H. DONELL

ERVIN COHEN & JESSUP LLP

# DECLARATION OF BYRON Z. MOLDO

I, Byron Z. Moldo, declare as follows:

1. I am an attorney authorized and licensed to practice law before all Courts of this State and this Court. I am a member of Ervin Cohen & Jessup, LLP ("ECJ"), counsel for James H. Donell, Permanent Receiver. I make this declaration based on facts within my personal knowledge or upon the are based upon the books and records maintained by my firm. If called upon to do so, I could and would competently testify as to all facts contained herein.

2. To the best of my knowledge, information and belief, formed after reasonable inquiry, the application of ECJ for approval of final compensation as set forth in the Motion to: (1) Approve Final Account and Report; (2) Approve Application for Final Receiver's Fees and Expenses; (3) Establish Liquidating Trust; and (4) Discharge Receiver (the "Application"), and all fees and expenses requested therein, are true and accurate, and comply with the SEC Billing Instructions.

3. All fees contained in the Application are based upon hourly rates listed in ECJ's fee schedule, and fees requested are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

4. The Application does not include reimbursement for the amortization of any cost of any investment, equipment, or capital outlay.

5. The amounts requested in the Application for reimbursement of expenses are for services which were necessary and justifiably purchased or contracted for with a third party. To the extent the reimbursement of expenses includes items that were done in house, only the actual cost is included in the request for reimbursement, and no profit is made thereon.

////

////

////

13390.10:2746614.1

28

ERVIN COHEN & JESSUP LLP

1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct and this declaration was executed this

3    31st day of October, 2016, at Beverly Hills, California.

4

5                                        /s/ Byron Z. Moldo
                                         BYRON Z. MOLDO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13390.10:2746614.1                                      29

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES
AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P
TOMLINSON AND HOWARD GROBSTEIN

## DECLARATION OF SUSAN P. TOMLINSON

I, Susan P. Tomlinson, declare as follows:

1.     I am a Certified Public Accountant and a partner in the firm of Crowe Horwath LLP ("Crowe"), certified public accountants.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2.     Up to and including February 15, 2013, Howard Grobstein ("Grobstein") was the partner and the head of forensic accounting at Crowe. Grobstein was in charge of the engagement by James H. Donell, Permanent Receiver (the "Receiver") to provide forensic accounting services to the receivership estate in this case.

3.     As of February 15, 2013, Grobstein left Crowe, and on February 18, 2013, founded and began operations at Grobstein Teeple Financial Advisory Services, LLP ("GTFAS").  With the exception of the professionals who provided tax-related services, all of the members of Grobstein's team at Crowe who worked on this engagement also moved to GTFAS on February 18, 2013.  As of February 15, 2013, the scope of Crowe's employment by the Receiver was reduced, and limited to tax-related services.

4.     To the best of my knowledge, information and belief, formed after reasonable inquiry, the application of Crowe for approval of final compensation as set forth in the Motion to: (1) Approve Final Account and Report; (2) Approve Application for Final Receiver's Fees and Expenses; (3) Establish Liquidating Trust; and (4) Discharge Receiver (the "Application"), and all fees and expenses requested therein, are true and accurate, and comply with the SEC Billing Instructions.

5.     All fees contained in the Application are based upon hourly rates listed in Crowe's fee schedule, and fees requested are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

13390.10:2746614.1

30

ERVIN COHEN & JESSUP LLP

6.      The Application does not include reimbursement for the amortization of any cost of any investment, equipment, or capital outlay.

7.      The amounts requested in the Application for reimbursement of expenses are for services which were necessary and justifiably purchased or contracted for with a third party.  To the extent the reimbursement of expenses includes items that were done in house, only the actual cost is included in the request for reimbursement, and no profit is made thereon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed this 31 st day of October, 2016, at Sherman Oaks, California.

SUSAN P. TOMLINSON

13390.10:2746614.1

31

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

ERVIN COHEN & JESSUP LLP

## <u>DECLARATION OF HOWARD B. GROBSTEIN</u>

I, Howard B. Grobstein, declare as follows:

1.      I am a Certified Public Accountant and a partner in Grobstein Teeple Financial Advisory Services LLP ("GTFAS").  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2.      Up to and including February 15, 2013, I was a partner and the head of forensic accounting at Crowe Horwath ("Crowe"), certified public accountants.  In that role, I was in charge of the engagement by James H. Donell, Permanent Receiver (the "Receiver") to provide forensic accounting services to the receivership estate in this case.

3.      As of February 15, 2013, I left Crowe, and on February 18, 2013 founded and began operations at GTFAS.  With the exception of the professionals who provided tax-related services, all of the members of my team at Crowe who worked on this engagement also moved to GTFAS on February 18, 2013.  All of the accountants at GTFAS have prior experience in representing receivers and are familiar with ponzi schemes and fraudulent transactions such as those involved here.  Furthermore, they are all intimately familiar with this case due to the extensive amount of forensic accounting they have provided to the Receiver with respect to the Receivership Entities since the Receiver's appointment.

4.      I directed all work performed on this engagement by personnel at Crowe.  Because all of the members of my team at Crowe who worked on this engagement also moved to GTFAS in February, 2013, there has been complete continuity in the accounting professionals providing services to the Receiver in this matter and the SEC Action.  The personnel who performed services for this engagement are experienced professionals competent to perform the services which we have been engaged to perform.

13390.10:2746614.1

32

5.     While at Crowe, my team reviewed voluminous documents and records obtained by the Receiver.  This analysis required extensive time and care because my team at Crowe discovered that the NewPoint Entities maintained 74 bank and investment accounts during the period January 1, 2003 through January 8, 2010. Among the numerous tasks performed by my team at Crowe was the preparation of a global forensic accounting analysis of all of the Receivership Entities.  In support of that accounting, my team at Crowe produced a report in excess of four hundred (400) pages along with a summary of all Receivership Entities by transaction type.

6.     To the best of my knowledge, information and belief, formed after reasonable inquiry, the application of Grobstein for approval of final compensation as set forth in the Motion to: (1) Approve Final Account and Report; (2) Approve Application for Final Receiver's Fees and Expenses; (3) Establish Liquidating Trust; and (4) Discharge Receiver (the "Application"), and all fees and expenses requested therein, are true and accurate, and comply with the SEC Billing Instructions.

7.     All fees contained in the Application are based upon hourly rates listed in Grobstein's fee schedule, and fees requested are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

8.     The Application does not include reimbursement for the amortization of any cost of any investment, equipment, or capital outlay.

9.     The amounts requested in the Application for reimbursement of expenses are for services which were necessary and justifiably purchased or contracted for with a third party.  To the extent the reimbursement of expenses includes items that were done in house, only the actual cost is included in the request for reimbursement, and no profit is made thereon.

////

////

////

13390.10:2746614.1

33

ERVIN COHEN & JESSUP LLP

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct and this declaration was executed

3  this 1st day of November, 2016, at Woodland Hills, California.

4

5    _____

6    HOWARD B. GROBSTEIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(i)        113390.10:2746614.1

34

FINAL ACCOUNT AND REPORT AND APPLICATION OF JAMES H. DONELL, PERMANENT RECEIVER, FOR APPROVAL OF FINAL RECEIVER'S FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

4

5

On November 14, 2016, I served true copies of the following document(s) described as **MOTION TO:  (1) APPROVE FINAL ACCOUNT AND REPORT; (2) APPROVE APPLICATION FOR FINAL RECEIVER'S FEES AND EXPENSES; (3) ESTABLISH LIQUIDATING TRUST; AND (4) DISCHARGE RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES H. DONELL, BYRON Z. MOLDO, SUSAN P. TOMLINSON AND HOWARD GROBSTEIN** on the interested parties in this action as follows:

6

7

8

9

10

## SEE ATTACHED SERVICE LIST

11

12

**X**       **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

13

14

15

16

___       **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Ervin Cohen & Jessup LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

17

18

19

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20

21

Executed on November 14, 2016, at Beverly Hills, California.

22

23

24

_____
Lore Pekrul

25

26

27

28

13390.10:2798943.1

## SERVICE LIST

**SERVED BY CM/ECF NOTICE OF ELECTRONIC FILING**

Aaron M May    aaron.may@hysmlaw.com

Antoinette S Waller    antoinette.waller@att.net, a.lessuk@att.net

Aram Ordubegian    ordubegian.aram@arentfox.com

Bernard B Smyth    smythb@sec.gov

Bruce J Altshuler    bjaltshuler@sbcglobal.net, jamiekleinman@sbcglobal.net

Byron Z Moldo    bmoldo@ecjlaw.com, echeung@ecjlaw.com, lpekrul@ecjlaw.com

Clyde F DeWitt    clydedewitt@earthlink.net

David Bruce Shemano    dshemano@robinskaplan.com

David I Hurwitz    dih@birdmarella.com, docket@birdmarella.com, spalmieri@birdmarella.com

David Karl Willingham    willingham@caldwell-leslie.com, hernandez@caldwell-leslie.com, records@caldwell-leslie.com

Farid Novian    farid@novianlaw.com

Finola Manvelian    manvelianf@sec.gov

Gary S Lincenberg    gsl@birdmarella.com, cmd@birdmarella.com, docket@birdmarella.com

Hannah Lynn Cannom    hcannom@wscylaw.com

Jerome A Kaplan    kapkenkd@pacbell.net, jobeninicasa@gmail.com, msandval@pacbell.net

John B Bulgozdy    bulgozdyj@sec.gov, berryj@sec.gov, irwinma@sec.gov, LAROFiling@sec.gov

John W Shenk    jshenk@ecjlaw.com, kanthony@ecjlaw.com

Lynn M Dean    deanl@sec.gov, berryj@sec.gov, irwinma@sec.gov, LAROFiling@sec.gov

Marc S Harris    mharris@scheperkim.com, ptanigawa@scheperkim.com

Mark C Scarsi    mscarsi@milbank.com

Matthew W O'Brien    Matthew.OBrien@usdoj.gov, USACAC.Criminal@usdoj.gov

Michael C Lieb    mlieb@ecjlaw.com, lmoore@ecjlaw.com

Paul G Stern    USACAC.Criminal@usdoj.gov, CaseView.ECF@usdoj.gov, paul.stern@usdoj.gov

Peter Alan Davidson    pdavidson@ecjlaw.com, lpekrul@ecjlaw.com

Revi-ruth Enriquez    renriquez@milbank.com

Stephen Gerard Larson    slarson@larsonobrienlaw.com, hpark@larsonobrienlaw.com, JBehnke@larsonobrienlaw.com, Lynn.Fiorentino@arentfox.com, mmeister@larsonobrienlaw.com, mvasquez@larsonobrienlaw.com, ygutierrez@larsonobrienlaw.com